67699. COLLINS v. THE STATE.
67700. ADCOCK v. THE STATE.

DEEN, Presiding Judge.

Collins and Adcock, city clerk and city councilman of the City of Adairsville, respectively, were jointly indicted for twenty-three counts of theft by conversion. Collins was convicted of all counts and Adcock was convicted of fourteen counts.

1. The trial court did not err in denying appellants' motion for a directed verdict of acquittal despite their contention that there was no evidence to show they were in possession of the city's funds. Appellants' reliance upon this court's holding in *Callaway v. State*, 165 Ga. App. 862 (303 SE2d 42) (1983) is misplaced. In that case, appellant was only the project director and never had possession of the funds in question, had no control over their disbursement, and could only file a request for disbursement in payment of expenses. In the instant case, the evidence showed that both defendants had possession of and control over the city's four bank accounts by virtue of their offices as city clerk and city councilman, and they had the authority to disburse funds to pay the city's bills. Although the extent

of this authority is subject to conflicting evidence, it is uncontroverted that defendants had authority to sign checks for some amount.

The trial court did not err in denying the motions for a directed verdict of acquittal as that standard is set forth in OCGA § 17-9-1 (a) (Code Ann. § 27-1802). See *Conger v. State*, 250 Ga. 867, 870 (301 SE2d 878) (1983). "Review of the evidence adduced at trial reveals there was ample evidence sufficient to enable any rational trier of fact to find the existence of the offenses charged beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Stinson v. State*, 244 Ga. 219 (4) (259 SE2d 471); thus, it was not error for the trial court to refuse to grant the motions for a directed verdict of acquittal. *Lee v. State*, 247 Ga. 411, 412 (6) (276 SE2d 590) (1981)." *Maddox v. State*, 170 Ga. App. 498 (317 SE2d 617) (1984). An appellate court does not consider the weight of the evidence. *Ridley v. State*, 236 Ga. 147 (223 SE2d 131) (1976). After reviewing the evidence in the case, we find the trial court did not err in denying the motions for a directed verdict of acquittal.

2. Appellants' venue challenge is likewise without merit. The State was not required to prove that the City of Adairsville is a municipal government because the courts can take judicial notice of the charter of a municipality. *Nobles v. City of Dublin*, 18 Ga. App. 498 (89 SE 605) (1916). The town of Adairsville was incorporated by Ga. L. 1853-54, p. 224, and the name changed to the City of Adairsville by Ga. L. 1958, p. 3426. This court may take judicial notice of cities within a country. *Landy v. State*, 155 Ga. App. 763 (272 SE2d 735) (1980); *Carter v. State*, 146 Ga. App. 681 (247 SE2d 191) (1978).

OCGA § 16-8-11 (Code Ann. § 26-1811) provides that a prosecution for theft by conversion "under Code Sections 16-8-2 through 16-8-9, and 16-8-13 through 16-8-15, the crime shall be considered as having been committed in any county in which the accused exercised control over the property which was the subject of the theft." The State bears the burden of proving that the appellant exercised control over the allegedly converted funds in the county where the case was prosecuted. *Stowe v. State*, 163 Ga. App. 535 (295 SE2d 209) (1982). In this case, the face of the checks in question show they were drawn on accounts held in the name of the City of Adairsville on banks located in Adairsville and Cartersville and these checks were honored by the banks. We take judicial notice that both cities are located in Bartow County.

3. Adcock's contentions that the State failed to prove he had possession of United States currency and that it failed to further prove that the funds in the bank accounts belonged solely to the city, or that appellants had a legal obligation to apply and disburse the funds for the purchases and payment of goods and services received by the city, were not raised in the court below and will not be consid-

ered for the first time in this court. Court of Appeals Rule 15 (c) (2).

4. Appellant Collins contends that the State failed to prove the elements of counts 2-11 and Adcock makes a similar allegation as to all the counts. Collins also contends that the State failed to prove that he converted to his own use the items set forth in counts 2-11. Collins was convicted of all twenty-three counts and Adcock was convicted of count 1, count 7 and counts 12-23.

Count 1 charged both men with converting $320 of city funds to pay a dental bill for oral surgery on Adcock's daughter. Adcock admitted the work was performed but at a time when he was not a city councilman. He claimed he thought he was covered by the city's group insurance plan, but the claim was eventually denied. The check was signed by both defendants. Counts 2 through 6 and 8 through 11 allege theft by conversion in that payment of city funds was made to certain named business establishments for twenty 10 ft. posts, twenty 14 ft. posts, a central air conditioning motor, a 14 ft. panel gate, four 8 ft. posts, 3 ft. of chain, 200 lbs. of fescue and twenty 3 ft. posts, four 10 ft. posts, four 10 ft. gates and three rolls of fencing wire, three baseboard heaters, 250 ft. of electrical wiring and a fuse box panel, two baseboard heaters and two thermostats, and six circuit breakers. Count 7 alleged that more than $200 of city funds were used to purchase six tires for the defendants' personal use and counts 12-13 alleged that city funds were used to pay twelve personal gasoline credit card accounts.

Each supplier of goods testified about the transactions, identified the invoice pertaining to each item, and identified the checks signed by Adcock and Collins which were received in payment for the merchandise. On several of the invoices, no signature of the person receiving the goods appears. The signature "J. M. Collins" appears on the invoice pertaining to count 9 and the purported signature of "Larry Pratt" appears on a similar invoice constituting a part of count 9. The company salesman testified that he knew Pratt, and that Pratt did not pick up the equipment listed. Pratt, the city's water and gas management superintendent for nearly eight years, testified that he does all the maintenance work for the city and denied that the city had purchased, received or used any of the items set forth in the nine counts. He further denied that the signature on the exhibit pertaining to count 9 was his. Pratt testified that on the Saturday prior to trial he was approached by Adcock and Collins at the City Recreation Department where he was removing a tree. Collins asked him to change his testimony "about those things that had been bought by the city" and "to tell that the city received them." Adcock said "he would appreciate it if I could help him in any way," but "he wasn't putting words in my mouth." Pratt replied that he was going to have to tell the truth about it. Collins responded, "There are going to be a lot

more city employees go down with them if they were convicted." The following Monday, Pratt reported the incident to the mayor and a city councilman. A witness who sold the posts (counts 2 and 3) examined photographs, taken by a GBI agent, of Collins' yard and pasture and testified that the posts were similar to posts he had sold.

Counts 12-23 alleged conversion of city funds by paying a specified oil and gasoline company. The State used the testimony from representatives of each of the seven companies and proved that payments made by the city were for charges made to Collins' personal credit cards. Each witness also identified the city checks which paid his company's credit card billing. The mayor testified that Collins was never authorized to be reimbursed for the gasoline he charged to his personal credit cards.

Count 7 alleged conversion of city funds by payment to a tire company for six tires. A tire company employee testified that Collins purchased four truck tires and two car tires on March 16, 1982, and the purchase price was billed to the city and paid by a check drawn on the city water account. Pratt testified that the city had never purchased tires from the company in question and that he did not buy the tires. The purchase order bears the signatures of Adcock and Collins. The mayor testified that he received a phone call from a city councilman who reported that he had been contacted by the tire company requesting payment and the mayor stated "we didn't know we had got them." The issue was raised at the next council meeting "and the next day the tires wound up being paid for [by one of the defendants], plus a purchase order dated two days after the tires were bought." The next day Adcock called the mayor and said "he didn't know why he didn't raise it at the meeting, but he had authorized Collins to buy the tires." Adcock did not tell him that he had purchased two tires for himself. Adcock admitted he got the tires and testified that Collins also bought four tires because the city got a discount. Adcock said that he had approved the request provided that the city was to be reimbursed. Adcock claims he gave Collins the money for the tires he purchased and later discovered that Collins had charged all six tires to the city, although he paid it back within a few days. On cross-examination, he admitted not telling a GBI agent that he received two tires, and that the notation "tires to be reimbursed by J. M. Collins" does not appear on the carbon copy of the purchase order. Adcock also testified that he did not question Collins about any purchases that Collins allegedly made on behalf of the city which were the subject matter of the indictment. Adcock did not deny signing the city checks in question and, while Collins did not testify, counsel for neither defendant questioned the State's proof of the authenticity of the signatures of the defendants on the checks.

It was not error to deny the motions for a directed verdict of

acquittal for the reasons set forth in Division 1 of this opinion.

5. The trial court did not err in refusing to grant a mistrial because of testimony that specified sums of money were missing from the city's accounts and in refusing to give limiting instructions to the jury.

The first mention of missing money as made when the State's first witness, an accountant, testified that he discovered a shortage of $2,814.33 in the city's accounts for the month of March 1982. No objection or motion for a mistrial was made although Collins' counsel moved to strike the testimony as irrelevant and immaterial to any issue in the case. In ruling upon the motion to strike, the court held that the testimony served to rebut the claim made in the opening statement that the action against the defendant was taken for purely personal reasons. Neither defendant took issue with this ruling.

Eighteen witnesses later, the mayor testified, "we came up with about $2,800 missing. This was cash money . . . I confronted Mr. Collins with it and he resigned." Counsel objected that the testimony was prejudicial, not covered by the indictments, and moved for a mistrial. The court denied the motions, ruling that appellants raised the defense that the prosecution was initiated for personal reasons and opened the door for the State to show the real reason for the investigation which resulted in the charges set forth in the indictment. Collins still maintains on appeal that "the counts of this indictment were politically motivated." We find no error in the court's ruling.

6. Appellants also claim that it was error to deny their motions for a mistrial made after the mayor testified as to a conversation he had with Collins, in which Collins came to his office and "said he wanted to try to settle this up." The mayor stated that he advised him that the matter was in the district attorney's hands. Collins admitted making purchases of two or three thousand dollars and said, "Well, I was going to put the money back." The mayor responded, "We're talking about four months and you've been here six years . . . there's over $100,000 missing . . . there might be some settlement reached . . . it would have to be done through the D. A.'s office." No request was made for curative or limiting instructions after the motions for a mistrial were made.

This testimony also tended to show lack of personal or political motivation for the prosecution. Moreover, it constituted an admission by Collins that he misused several thousand dollars of the city's funds and wanted to settle his case. As Adcock was not mentioned in the mayor's testimony, the testimony was not harmful to him.

7. In anticipation of Larry Pratt's testimony that the defendants wanted him to change his testimony, the court heard the evidence outside the presence of the jury because Adcock moved for a severance contending that the statement did not implicate him and that he

would move for a mistrial if the evidence should be presented to a jury. The court denied the motions holding that Adcock was implicated and allowed the jury to hear the testimony. As the motion was not renewed after the evidence was presented, there is nothing for this court to review.

8. The court did not err in recharging the jury on theft by conversion, at the jury's request. After the original charge was given, defense counsel requested a recharge to correct a slip of the tongue. Later, after deliberations had begun, the jury requested the complained of recharge. The court then instructed the jury on the difference between theft by conversion and other types of theft in clear, understandable, non-technical language. When the court asked, "Does that clear it up?" a juror responded, "Yes, sir." We find no merit in this enumeration.

9. Appellants further contend that the court erred in re-reading the first count of the indictment to the jury. After the recharge mentioned in Division 8 above, a juror indicated that she did not understand how to determine if the elements of the crime had been proved as alleged in the indictment. The court then took the first count and explained it to the jury, breaking it down into sections and explaining what the State must prove beyond a reasonable doubt. At the end, the court again asked if the jury's confusion was cleared up and a juror indicated that there was no longer any confusion. Counsel objected. The basis of the objection was that the court should have recharged the jury that the State would have to prove beyond a reasonable doubt that the defendants "did whatever it was they were alleged that they did, with intent to commit this crime; with the specific intent to commit this crime." The court pointed out that it had charged the words "did knowingly convert" and denied the request.

The transcript shows that the court recharged the jury on the State's burden of proof beyond a reasonable doubt no fewer than eight times during the short recharge, and the original charge fully covered the law applicable to intent. We find no error.

10. The trial court did not err in refusing to declare a mistrial because of the objection by the prosecution to a statement made in the closing argument by Adcock's attorney. Counsel was arguing that the evidence did not contain certain proof which had, in fact, been ordered excluded by a ruling on a pre-trial motion. The court overruled the objection and denied the motion for a mistrial. Appellant Adcock has not shown how he was harmed by the ruling and we find that the court did not err in denying the motion for a mistrial.

11. It was not error for the trial court to charge the State's request to charge number 1. The charge is taken verbatim from *Denmark v. State*, 44 Ga. App. 157 (2) (b) (161 SE 286) (1931), with the exception that the word "municipal" is inserted in front of the word

"corporation." The objected-to portion of the charge reads: "An officer or agent of a municipal corporation cannot take money of the municipal corporation entrusted to him, or in his possession by virtue of his official relation or agency, and use it, even temporarily, for his private benefit and avoid criminal responsibility by calling it a loan."

Adcock cites no legal authority in support of his assertion that this rule does not apply to a municipal corporation, and we find no merit in his argument that the rule is inapplicable because a municipal corporation can authorize loans through the city council. He overlooks the fact that a private corporation can also authorize loans through its board of directors or through a provision in the corporate charter authorizing the executive officer to make loans.

12. Both appellants contend it was error for the trial court to fail to charge the affirmative defense of "claim of right" as provided in OCGA § 16-8-10 (2) (Code Ann. § 26-1810 (2)), wherein it is stated that one has an affirmative defense to a charge of theft by conversion where one "[a]cted under an honest claim of right to the property or service involved or under a right to acquire or dispose of it as he did." Neither defendant filed a timely written request for this charge and Adcock claims it was his sole defense.

On appeal, Collins claims that the prosecution was politically motivated and we find that he raised this defense in the court below. Although he did not testify, his wife testified that she had been informed by Larry Pratt that the mayor and one Jimmy Mealor were out to get Collins and Adcock. Contrary to his assertion that "claim of right" was his sole defense, Adcock also raised the "political motivation" defense in the court below when he testified that Mealor, whom he had defeated in an election for the position of city councilman, had threatened to "get you one way or the other." A defense witness, called originally by Adcock and recalled by Collins, also testified that Mealor was one of four men on election night who said "they would get Mr. Adcock one way or the other before it was over." The mayor denied being approached by Mealor and asked to begin an investigation.

As the defense of political motivation for the prosecution was raised in addition to the defense of "claim of right," both defendants were required to submit a timely written request for such a defense of "claim of right" if they wished to have it submitted to the jury. *State v. Stonaker*, 236 Ga. 1 (222 SE2d 354) (1976). A criminal defendant is not relieved from the necessity of requesting instructions "except in those circumstances where the omission is clearly harmful and erroneous as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence." *Spear v. State*, 230 Ga. 74, 75 (195 SE2d 397) (1973). We fail to see how the omission of this "claim of right" charge was clearly harmful and erroneous,

where the entire gist of the State's case against the appellants was precisely that they converted the city's funds without any claim of right.

*Judgment affirmed. McMurray, C. J., and Sognier, J., concur.*

DECIDED APRIL 2, 1984 — REHEARING DENIED APRIL 30, 1984

*Ted B. Herbert,* for appellant (case no. 67699).

*David N. Vaughan, Jr., Velma C. Tilley,* for appellant (case no. 67700).

*Darrell E. Wilson, District Attorney, Mickey R. Thacker, Assistant District Attorney, Joe Chambers,* for appellee.