## A90A1004. WILLINGHAM v. THE STATE.
### (401 SE2d 63)

CARLEY, Chief Judge.

Appellant was tried before a jury and found guilty of 13 counts of theft by conversion of documents from the University of Georgia Library. He appeals from the denial of his motion for new trial.

1. The denial of appellant's motion to suppress is enumerated as error.

Appellant's reliance upon *Hill v. State*, 193 Ga. App. 280 (387 SE2d 582) (1989) is misplaced. Insofar as *Hill* might arguably be relevant to the facts of the instant case, it has been overruled. *State v. Harber*, 198 Ga. App. 170 (401 SE2d 57) (1990). Appellant's remaining contentions have been considered and are found to be without merit. The trial court was authorized to find that all searches were conducted in full compliance with applicable constitutional and statutory requirements.

2. We find no error in the trial court's failure to sustain appellant's challenge for cause which was directed towards prospective jurors who were employees of the University of Georgia, but who were not otherwise employed in, or assigned to, the University of Georgia Library. See *Jordan v. State*, 247 Ga. 328, 338 (6) (276 SE2d 224) (1981); *Culbertson v. State*, 193 Ga. App. 9, 10 (2) (386 SE2d 894) (1989); *Hickox v. State*, 138 Ga. App. 882 (1) (227 SE2d 829) (1976).

See also *United States v. Boyd*, 446 F2d 1267, 1275 (10) (5th Cir. 1971). This is *not* a case wherein the prospective jurors were employees of appellant or any other *party* to the case. Compare *Kesler v. State*, 249 Ga. 462, 470 (6) (291 SE2d 497) (1982); *Daniel v. Bi-Lo, Inc.*, 178 Ga. App. 849, 850 (1) (344 SE2d 707) (1986). Only appellant and the State were parties in this *criminal* case. While *kinship* to the victim may automatically disqualify prospective jurors in a criminal case pursuant to OCGA § 15-12-163 (b) (4), mere *employment* by the University of Georgia when the actual victim was the University of Georgia Library is *not* a *per se* disqualification under the above cited holdings.

3. It was not error to admit, over appellant's objections, numerous exhibits which were adequately shown to be business records of the University of Georgia Library. See *Gray v. Cousins Mtg. &c. Investments*, 150 Ga. App. 296 (1) (257 SE2d 365) (1979); *Lewis v. United Cal. Bank*, 143 Ga. App. 126 (1) (237 SE2d 645) (1977) aff'd 240 Ga. 823 (242 SE2d 581) (1978); *Cotton v. John W. Eshelman & Sons*, 137 Ga. App. 360, 361 (1) (223 SE2d 757) (1976).

4. The evidence, when construed most favorably for the State, was sufficient to authorize a rational trier of fact to find proof of appellant's guilt beyond a reasonable doubt and it was not, therefore, error to deny his motion for a directed verdict of acquittal. See *Adcock v. State*, 170 Ga. App. 753 (1) (318 SE2d 492) (1984) aff'd 253 Ga. 328 (322 SE2d 61) (1984).

5. Having considered appellant's fatal variance argument, we find that it has no merit. The evidence, when construed most favorably for the State, would authorize a finding that within the applicable statute of limitations, appellant committed the crimes that the multi-count indictment alleged he had committed. See *Decker v. State*, 139 Ga. App. 707, 709 (5) (229 SE2d 520) (1979).

*Judgments affirmed. Deen, P. J., McMurray, P. J., Birdsong and Cooper, JJ., concur. Banke, P. J., concurs specially. Sognier and Pope, JJ., dissent. Beasley, J., concurs in Divisions 1, 3, 4 and 5, but dissents as to Division 2, and as to the judgment.*

BANKE, Presiding Judge, concurring specially.

Pursuant to OCGA § 20-3-72, university police officers "have the power to make arrests for offenses committed upon any property under the jurisdiction of the board of regents. . . ." As the officers in the present case were investigating thefts of university property which had occurred upon university property, it follows that they were acting entirely within the scope of their law enforcement jurisdiction under § 20-3-72. For this reason, I agree that the trial court acted properly in denying the appellant's motion to suppress.

SOGNIER, Judge, dissenting.

I respectfully dissent.

1. Since this case will be decided en banc on the same day that *State v. Harber*, 198 Ga. App. 170 (401 SE2d 57) (1990) is issued, I believe the parties in the instant case are entitled to the same thorough treatment of the search and seizure issue as is given in *Harber*. Hence, for this case I again state my view that *Hill v. State*, 193 Ga. App. 280 (387 SE2d 582) (1989) was correctly decided and controls the search and seizure issue raised by appellant. Since the searches at issue were conducted prior to the effective date of the 1990 amendments to OCGA §§ 17-5-20; 17-5-21 (Ga. L. 1990, p. 1980, §§ 1-3), the only authority directly addressing the power of university system police to obtain and execute search warrants beyond the confines of a campus is our decision in *Hill*. In overruling the denial of the defendants' motion to suppress, this court held that because OCGA § 20-3-72 authorized university system police to make arrests "for offenses committed upon any property under the jurisdiction of the board of regents and for offenses committed upon any public or private property within 500 yards of any property under the jurisdiction of the board," search warrants likewise " 'must be confined to the territorial limits of the campus.' [Cit.]" Id. at 281.

It is uncontroverted that the searches in the case at bar were not conducted within these territorial limits. Although the thefts did occur "on property under the jurisdiction of the board of regents," we concluded in *Hill* that the statutory enactments governing university system police do not contemplate the exercise of their law enforcement powers beyond the territorial boundaries defined in OCGA § 20-3-72. I note that the university police officers who conducted the searches at issue were certified peace officers, and OCGA § 17-5-24 has been construed to authorize the execution of a search warrant by a certified peace officer outside his arrest jurisdiction. *Bruce v. State*, 183 Ga. App. 653 (359 SE2d 736) (1987). Nonetheless, a certified peace officer's authority arises only from express statutory authorization or by virtue of public employment or service. OCGA § 35-8-2 (8) (A). Unlike university system police, other law enforcement officers authorized under Georgia law are given a number of specified duties and powers in addition to the power to arrest. See OCGA § 35-2-33 (state patrol); OCGA § 36-8-5 (county police); OCGA § 35-3-8 (GBI agents); OCGA § 35-3-9 (GBI narcotics agents). In contrast, OCGA § 20-3-72, which was enacted in 1966 (Ga. L. 1966, p. 370), and is codified in the postsecondary education chapter of Title 20, is the only statute that specifically grants any law enforcement power to university system police. Accordingly, any authority of such officers beyond that specified in OCGA § 20-3-72 must arise from the general power of the board of regents to create and regulate universities. See Ga.

Const., Art. VIII, Sec. IV, Par. I; OCGA § 20-3-20 et seq. There is no other statute in Title 20, Chapter 3, Article 2 or elsewhere in our Code which grants to the board of regents any police powers beyond the territorial limits of the university system. Since university system police have no express statutory authority beyond university system property, and their employer, the board of regents, does not have the authority to grant such powers, I cannot construe the peace officer certification provisions to authorize university system police to exercise law enforcement powers beyond the territorial limits established by OCGA § 20-3-72.

This conclusion is consistent with the 1990 amendments to OCGA §§ 17-5-20 and 17-5-21, which were enacted after our decision in *Hill*, supra. OCGA § 17-5-20 was rewritten to provide in paragraph (a) that "[a] search warrant may be issued only upon the application of an officer of this state or its political subdivisions charged with the duty of enforcing the criminal laws or a currently certified peace officer engaged in the course of official duty, whether said officer is employed by a law enforcement unit of: (1) [t]he state or a political subdivision of the state; or (2) [a] university, college, or school." The 1990 revision to OCGA § 17-5-21 included the addition of a new paragraph (d) providing that when a campus police officer executes a search warrant by campus police "beyond the arrest jurisdiction of a campus policeman pursuant to Code Section 20-3-72, the execution of such search warrant shall be made jointly by the certified peace officer employed by a university . . . and a certified peace officer of a law enforcement unit of the political subdivision wherein the search will be conducted." These revisions, although including campus police in the search and seizure laws for the first time, indicate that the General Assembly retained an express distinction between certified peace officers employed by a college or university and other certified peace officers, and did not elect to extend to campus police authority equal to that possessed by law enforcement officers of the State or its political subdivisions.

This court has long recognized that " ' "[p]roceedings for the issuance of search warrants are to be strictly construed, and every constitutional and statutory requirement must be fully met, including all formalities required by statute, before a valid search warrant may issue. Moreover, a statute prescribing the method of issuing search warrants must be read and construed in the light of, and conform in all essential respects to, the provisions of the constitution granting immunity from unreasonable searches and seizures." ·[Cit.] It should be borne in mind that here we are dealing with a valuable guaranty, a part of the Bill of Rights, the subject matter of the Fourth Amendment to our national Constitution, and embodied in the Georgia Constitution. We, who have this right, must carefully guard it against in-

fringement.' " *Pruitt v. State*, 123 Ga. App. 659, 664 (182 SE2d 142) (1971). As a result, I find that the searches on February 2 and 17 and March 30 were not authorized under the law applicable at the time, and consequently find the trial court erred by denying appellant's motion to suppress the evidence seized. See *Hill*, supra at 281.

I further agree with appellant that the one consensual search conducted on February 3 was invalid because the officers sought and gained entry to appellant's home for the express purpose of obtaining an item they had seen during prior searches, and thus, despite appellant's apparent consent, the evidence seized in this search was tainted as fruit of the poisonous tree of the prior illegal searches under the standard set forth in *Wong Sun v. United States*, 371 U. S. 471, 488 (83 SC 407, 9 LE2d 441, 455) (1963). Even assuming, without deciding, that appellant's consent to search was voluntary and not coerced, evidence seized during the search on February 3 could not be used against appellant at trial unless the search was sufficiently attenuated from the prior illegal searches. *United States v. Robinson*, 625 F2d 1211, 1219 (5th Cir. 1980); *Brown v. State*, 188 Ga. App. 184, 187 (372 SE2d 514) (1988). The factors to be considered are the temporal proximity of the illegal activity and the consent, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. *Robinson*, supra at 1220; *Brown*, supra. Here, there were no intervening circumstances or breaks in the chain of illegality, and Officer Jones testified the university police returned to appellant's home for the express purpose of retrieving a map they had seen on prior entries. Nor was there a significant lapse of time between this search and the one conducted a day earlier. Accordingly, I would reverse the denial of appellant's motions to suppress.

2. I also agree with appellant that the trial court erred by not excusing for cause all prospective jurors who were employed by the University of Georgia. Our Supreme Court has adopted in criminal cases the rule initially applied in civil cases of disqualifying for cause potential jurors who are employed by the same entity as the defendant when the defendant has the power to discharge the employees. *Kesler v. State*, 249 Ga. 462, 470-471 (6) (291 SE2d 497) (1982). I believe we also should adopt for criminal cases the rule that a prospective juror should be disqualified for cause " 'when there exists any business relation between himself and one of the parties which may tend to influence the verdict.' [Cit.]" *Daniel v. Bi-Lo, Inc.*, 178 Ga. App. 849, 850 (344 SE2d 707) (1986). " 'The wisdom of such [a] rule is substantiated when one considers the plight of any employee during voir dire. "The single purpose for voir dire is the ascertainment of the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination." (Cit.) An individual subpoenaed to jury service in the performance of his

public duty should not be called upon to answer affirmatively or negatively with its resultant impact either way upon him personally the question: "Would your employment prevent you from fulfillment of your sworn duty as a juror to act fairly and impartially and without any bias as between the parties in this case?" In order to [e]nsure that each party obtains a panel of impartial jurors it is essential to rule that regardless of any presumption employees should be held incompetent to serve as a juror in a case in which the employer is a party.' [Cit.] This rule is applicable to parties who, although not named in the suit, have a financial or other interest in the outcome of the litigation to be tried. [Cits.] . . . ' "An employee . . . may be, in rare instances, an impartial juror in passing upon the rights of his employers. It is possible for a judge or juror to be so absolutely fair that he could try his own cause. But there must be a rule upon the subject, and the only rule that can be adopted with safety is one which recognizes the interest to which humanity is generally susceptible and not a rule based upon rare exceptions." ' [Cit.]" Id. at 850-851. Surely the Sixth Amendment entitles a criminal defendant to the same protection. Where, as here, seven of the prospective jurors were employed by the victim of the theft and were dependent upon that employer for their income, they should have been disqualified for cause, and the failure to do so constitutes reversible error. See id. at 852 (1); see also *Crumpton v. Kelly*, 185 Ga. App. 245-246 (1) (363 SE2d 799) (1987).

I am authorized to state that Judge Pope concurs in the dissent and Judge Beasley concurs in Division 2 only of the dissent.

DECIDED DECEMBER 5, 1990 —
REHEARING DENIED DECEMBER 20, 1990 — 

*Fortson, Bentley & Griffin, Ernest De Pascale, Jr., James A. Dunlap, Jr.*, for appellant.

*Harry N. Gordon, District Attorney, Richard J. Weaver, Assistant District Attorney*, for appellee.