A90A1077. THE STATE v. HARBER.
(401 SE2d 57)

CARLEY, Chief Judge.

Appellee was indicted for two counts of violating the Georgia Controlled Substances Act and he filed a pre-trial motion to suppress. The trial court, relying upon *Hill v. State*, 193 Ga. App. 280 (387 SE2d 582) (1989), granted appellee's motion and the State appeals from that order.

1. The issue as presented in *Hill v. State*, supra at 280, was whether "campus police lacked the authority to obtain and execute a

search warrant for a residence located more than 500 yards off campus." Relying upon OCGA § 20-3-72 and Op. Atty. Gen. 70-69, it was held "that the legislature [had not] intended to give to University of Georgia campus police and security personnel carte blanche authority to obtain and execute search warrants directed to residences or businesses located outside the immediate vicinity of university property." *Hill v. State*, supra at 281. It is this holding that must be followed, distinguished or overruled in the instant case.

By its terms, OCGA § 20-3-72 relates only to the territorial authority of campus police officers to make an *arrest*. In this regard, campus police officers are essentially no different from county and municipal police officers whose authority to make an *arrest* may otherwise be subject to similar territorial restrictions. See generally OCGA §§ 36-8-5; 40-13-30. However, it is *not* the territorial authority of campus police officers to make an arrest that is in question. The issue is the territorial authority of campus police officers to obtain and execute a *search warrant*. Nothing in OCGA § 20-3-72 purports to address this issue.

Former OCGA § 17-5-20 is the relevant statute with regard to the authority to *obtain* a search warrant. That statute provided that "[a] search warrant may be issued only upon the application of an *officer of this state* or its political subdivisions charged with the duty of enforcing the criminal laws." (Emphasis supplied.) As employed in this former Code section, an "officer of this state" refers to one who has been authorized by the State to enforce its criminal laws and who has received certification pursuant to the Georgia Peace Officer Standards & Training Act. *Holstein v. State*, 183 Ga. App. 610 (359 SE2d 360) (1987). It is clear that such an "officer of this state" *does* have the authority to obtain a search warrant even though it may be directed at locations which lie outside the boundaries of the particular political subdivision that employs him. *Bruce v. State*, 183 Ga. App. 653 (359 SE2d 736) (1987). In the instant case, it is undisputed that those campus officers who obtained the search warrant directed at appellee's residence were authorized by the State to enforce its laws *and* that they were also duly certified pursuant to the Georgia Peace Officer Standards & Training Act. Accordingly, pretermitting any territorial limitation on the authority of these duly certified campus police officers to make an *arrest* of appellee pursuant to OCGA § 20-3-72, it seems clear that there is no comparable territorial limitation on their authority to obtain a *search warrant* directed at appellee's residence pursuant to former OCGA § 17-5-20. It would be anomalous to hold that a certified municipal or county police "officer" *is* authorized to obtain an extra-territorial search warrant *notwithstanding* any statutory restriction on his authority to make an extra-territorial arrest, but that a certified campus police "officer" is *not* so authorized *be-*

*cause* of a comparable statutory restriction on his authority to make an extra-territorial arrest.

There is no statutory authority to support a contrary construction of the authority of a duly certified campus police officer to obtain an extra-territorial search warrant. The only authority to the contrary is this court's decision in *Hill v. State*, supra. However, *Hill* relied entirely upon Op. Atty. Gen. 70-69 and that reliance was misplaced. The 1970 opinion of the Attorney General did *not* specifically address the authority to obtain an extra-territorial search warrant of a *duly certified campus police officer*. In this regard, it is important to note that the 1970 opinion of the Attorney General was issued *before* it had been judicially determined that a duly certified county or municipal officer, as an "officer of this state," *does* have the authority to obtain an extra-territorial search warrant notwithstanding his lack of authority to make an extra-territorial arrest. *Fowler v. State*, 128 Ga. App. 501, 503 (c) (197 SE2d 502) (1973); *Bruce v. State*, supra. Likewise, the 1970 opinion of the Attorney General was issued *before* the legislature specifically authorized a campus policeman to obtain certification and thereby become an "officer of this state." See OCGA § 20-8-1 et seq. Although campus policemen of the university system are *exempt* from any *requirement* of certification, there is nothing in the statute which *prohibits* them from seeking and obtaining such certification. See OCGA § 20-8-4.

Accordingly, *Hill v. State*, supra, erroneously relied upon the 1970 opinion of the Attorney General rather than subsequent judicial and statutory authority and, as the result, OCGA § 20-3-72 was misconstrued as evincing anything other than a mere expression of the legislative intent that the authority of campus police officers, whether certified or not, to make an *arrest* is to be subject to a territorial limitation comparable to that which is applicable to county and municipal officers. That *Hill* did in fact err in relying upon the 1970 opinion of the Attorney General rather than subsequent judicial and statutory authority and consequently miscontrued OCGA § 20-3-72 as *also* evincing the legislative intent to create a territorial limitation on the authority of certified campus police officers to obtain a *search warrant* is given further support by the General Assembly's own response to that decision. In 1990, the legislature undertook "to *clarify* the authority of peace officers employed by universities . . . to apply for search warrants" and "to *make manifest* the intention of the General Assembly that peace officers who have met the standards established by the Georgia Peace Officer Standards and Training Councils . . . shall be authorized to apply for and obtain search warrants. . . ." (Emphasis supplied.) Ga. L. 1990, p. 1980. The General Assembly apparently found it necessary to enact legislation to *clarify* and make its intent *manifest* because *Hill* had misconstrued the legislative intent

of the *then-existing* legislation on the subject. Accordingly, *Hill* is hereby overruled insofar as it holds that certified campus police officers who *obtained* an extra-territorial search warrant directed at locations more than 500 yards from campus property were not authorized to do so under former OCGA § 17-5-20.

Insofar as the *execution* of the search warrant is concerned, *Hill v. State*, supra, is factually distinguishable. In that case, "an officer from the Athens Police Department accompanied the campus police on the raid, [but] he left shortly after entry was gained into the residence. . . ." *Hill v. State*, supra at 280. In the instant case, however, the trial court specifically found: "A warrant to search the residence of [appellant] was obtained . . . by . . . a police officer employed by the University of Georgia Police Department. The search warrant *was executed* by detectives of the University of Georgia Police Department *and* three Clarke County detectives. A Clarke County detective actually entered with the warrant in hand, but the search of the premises was completed by only the University of Georgia Police." (Emphasis supplied.) The mere fact that the actual physical acts entailed in conducting the search of the premises may have been performed by the certified campus police officers does not demonstrate that the search *warrant* itself was not *executed jointly* with the certified Clarke County officers. See generally *Bradford v. State*, 184 Ga. App. 459 (361 SE2d 838) (1987). There is no authority for the proposition that officers who are on the premises pursuant to a search warrant but who do not actually conduct the physical search of the premises are not participants in the joint execution of the warrant. To the contrary, "execution" of a search warrant may encompass more than the mere conduction of the actual search of the premises, and all of those officers who are on the premises *are* participating in the joint execution of the warrant. See OCGA § 17-5-28. Since *Hill* is factually distinguishable, we need not decide whether it also erroneously held that there was a requirement for joint execution of a search warrant prior to the effective date of existing OCGA § 17-5-21 (d).

In conclusion, *Hill v. State*, supra, is overruled as authority for the proposition that the instant search warrant was illegally obtained and it is distinguished as authority for the proposition that the instant search warrant was illegally executed. It follows that the trial court erred in granting appellee's motion to suppress.

2. Even if the officers were not authorized to obtain and execute an extra-territorial search warrant, this lack of authority would constitute no more than a mere "technical" defect. In *State v. Giangregorio*, 181 Ga. App. 324, 325 (352 SE2d 193) (1986), we reversed the grant of a motion to suppress and held that an officer's lack of authority to make an extra-territorial arrest was a mere " 'technical irregularity not affecting the substantial rights of the accused.' "

There would appear to be no reason why that rationale is not equally applicable in the instant case. No "substantial rights" of appellee under the Fourth Amendment have been affected, since the warrant was issued by a neutral and detached judicial officer who was otherwise authorized to find the existence of probable cause based upon the affidavit that the officers presented to him. Compare *Reid v. State*, 129 Ga. App. 660 (2a) (200 SE2d 456) (1973); *Pruitt v. State*, 123 Ga. App. 659 (182 SE2d 142) (1971). Likewise, no "substantial rights" of appellee under applicable state statutory provisions are affected, since the warrant was not obtained and executed by private citizens for personal reasons, but by certified officers who were otherwise authorized to obtain and execute search warrants for reasons of law enforcement. Compare *Holstein v. State*, supra.

The officers' mere lack of authority to obtain and execute an *extra-territorial* search warrant would certainly constitute no more of an infringement upon appellee's "substantial rights" and no less of a "technical" defect than would the lack of probable cause to support issuance of the warrant. However, the lack of probable cause is not considered to be such a "defect" as will, in all cases, necessarily justify the grant of a motion to suppress evidence that has been seized pursuant to a search warrant. See *Debey v. State*, 192 Ga. App. 512 (385 SE2d 694) (1989).

Even under the appellee's analysis, the warrant in the instant case was issued on probable cause and in substantial, if not literal, compliance with all statutory requirements and, therefore, there are simply no "substantial rights" of his to be vindicated by granting the motion to suppress. The mere fact that the warrant may have been directed at a location which was beyond the territorial limits of the jurisdiction wherein the officers had law enforcement authority is a defect which should not serve as the "technical" predicate for allowing appellee to evade prosecution for the criminal act that he allegedly committed.

*Judgment reversed. Deen, P. J., McMurray, P. J., Birdsong, Beasley and Cooper, JJ., concur. Banke, P. J., concurs in part and dissents in part. Sognier and Pope, JJ., dissent.*

BANKE, Presiding Judge, concurring in part and dissenting in part.

The majority correctly distinguishes the present case from *Hill v. State*, 193 Ga. App. 280 (387 SE2d 582) (1989) (cert. den.), based on the trial court's findings that the university police did not act alone in conducting the present search but were joined by three Clarke County detectives, one of whom made the initial entry into the residence with the warrant in hand. However, the court then goes on to overrule *Hill*, attributing to it a holding that university police are required to obtain

local law enforcement assistance in *obtaining* as well as *executing* search warrants for premises located more than 500 yards off campus. While *Hill* may have implied the existence of such a requirement, there was clearly no such holding in that case.

The search at issue in *Hill* was held to be unlawful not because of the mere failure of the university police to involve the local police in the process of obtaining the warrant but because of their failure to involve the local police *in any aspect of the investigation.* (Although a local policeman was present on the scene at the time of the commencement of the search in *Hill,* "he left shortly after entry was gained into the residence, and neither he nor any other local law enforcement officer was involved in obtaining the warrant or in conducting the investigation which led to its issuance." Id. at 280.) Our holding that the search was unlawful under these circumstances was based upon a conclusion that the General Assembly had not intended through its enactment of OCGA § 20-3-72 to bestow upon university police and security personnel "carte blanche authority to obtain *and* execute search warrants directed to residences or businesses located outside the immediate vicinity of university property" (emphasis supplied) but rather had expressed "a legislative intention to limit the law enforcement jurisdiction of such personnel to offenses committed upon property under the jurisdiction of the Board of Regents or located within 500 yards of such property." Id. at 281.

Such a limitation on the powers of campus police is eminently reasonable in view of the fact that, unlike police officers employed by political subdivisions, they are not ultimately responsible to any elected official. Furthermore, contrary to the impression given by the majority opinion, the General Assembly in fact affirmed rather than disavowed the existence of such a limitation through its enactment of Ga. L. 1990, pp. 1980-82, for that legislation expressly limits, in a manner entirely consistent with *Hill,* the. authority of university police officers to execute search warrants for premises located off campus. Specifically, § 3 of the 1990 Act added a new subsection (d) to OCGA § 17-5-21 providing as follows: "Notwithstanding any provisions of Code section 17-5-20 or other provisions of this Code section to the contrary, with respect to the execution of a search warrant by a certified peace officer employed by a university, college, or school, which search warrant will be executed beyond the arrest jurisdiction of a campus policeman pursuant to Code Section 20-3-72, *the execution of such search warrant shall be made jointly by the certified peace officer employed by a university, college, or school and a certified peace officer of a law enforcement unit of the political subdivision wherein the search will be conducted.*" (Emphasis supplied.) Ga. L. 1990, p. 1982.

Under the facts of the present case, I fully agree that the defend-

ant's motion to suppress should have been denied. However, as I continue to believe that the Legislature never intended to give university police and security personnel carte blanche authority to conduct off-campus searches in cases where no university property is involved, I must dissent to the overruling of *Hill*.

I am authorized to state that Judge Pope joins in this opinion as to the dissent.

SOGNIER, Judge, dissenting.

I respectfully dissent because I believe *Hill v. State*, 193 Ga. App. 280 (387 SE2d 582) (1989) was correctly decided. The facts in *Hill* parallel those in the case at bar. In *Hill*, the defendants, two University of Georgia students, were convicted of drug offenses arising from possession of contraband found during a search of their off-campus apartment by university police. In overruling the denial of the defendants' motion to suppress, this court held that because OCGA § 20-3-72 authorized university system police to make arrests "for offenses committed upon any property under the jurisdiction of the board of regents and for offenses committed upon any public or private property within 500 yards of any property under the jurisdiction of the board," search warrants likewise " 'must be confined to the territorial limits of the campus.' [Cit.]" *Hill*, supra at 281. I recognize that the university police officers who conducted the searches at issue were certified peace officers, as were the officers in *Hill*, and OCGA § 17-5-24 has been construed to authorize the execution of a search warrant by a certified peace officer outside his arrest jurisdiction. *Bruce v. State*, 183 Ga. App. 653 (359 SE2d 736) (1987). Nonetheless, a certified peace officer's authority arises only from express statutory authorization or by virtue of public employment or service. OCGA § 35-8-2 (8) (A). Unlike university system police, other law enforcement officers authorized under Georgia law are given a number of specified duties and powers in addition to the power to arrest. See OCGA § 35-2-33 (state patrol); OCGA § 36-8-5 (county police); OCGA § 35-3-8 (GBI agents); OCGA § 35-3-9 (GBI narcotics agents). In contrast, OCGA § 20-3-72, which was enacted in 1966 (Ga. L. 1966, p. 370), and is codified in the postsecondary education chapter of Title 20, is the only statute that specifically grants any law enforcement power to university system police. Accordingly, any authority of such officers beyond that specified in OCGA § 20-3-72 must arise from the general power of the board of regents to create and regulate universities. See Ga. Const., Art. VIII, Sec. IV, Par. I; OCGA § 20-3-20 et seq. There is no other statute in Title 20, Chapter 3, Article 2 or elsewhere in our Code which grants to the board of regents any police powers beyond the territorial limits of the university system. Since university system police have no express statutory authority beyond university system

property, and their employer, the board of regents, does not have the authority to grant such powers, I cannot construe the peace officer certification provisions to authorize university system police to exercise law enforcement powers beyond the territorial limits established by OCGA § 20-3-72.

Contrary to the majority's assertion, the holding in *Hill* is consistent with the 1990 amendments to OCGA §§ 17-5-20 and 17-5-21. OCGA § 17-5-20 was rewritten to provide in paragraph (a) that "[a] search warrant may be issued only upon the application of an officer of this state or its political subdivisions charged with the duty of enforcing the criminal laws or a currently certified peace officer engaged in the course of official duty, whether said officer is employed by a law enforcement unit of: (1) [t]he state or a political subdivision of the state; or (2) [a] university, college, or school." The 1990 revision to OCGA § 17-5-21 included the addition of a new paragraph (d) providing that when a campus police officer executes a search warrant by campus police "beyond the arrest jurisdiction of a campus policeman pursuant to Code Section 20-3-72, the execution of such search warrant shall be made jointly by the certified peace officer employed by a university . . . and a certified peace officer of a law enforcement unit of the political subdivision wherein the search will be conducted." These revisions, although including campus police in the search and seizure laws for the first time, indicate that the General Assembly retained an express distinction between certified peace officers employed by a college or university and other certified peace officers, and did not elect to extend to campus police authority equal to that possessed by law enforcement officers of the state or its political subdivisions.

I also cannot agree that the university police officers' lack of authority to execute the search warrant was a mere "technical irregularity." This court has held that a search warrant obtained by an officer who is not authorized to exercise such powers is invalid and the fruits of the search must be suppressed. *Holstein v. State*, 183 Ga. App. 610 (359 SE2d 360) (1987). Accord *Reid v. State*, 129 Ga. App. 660 (2) (a) (200 SE2d 456) (1973). *State v. Giangregorio*, 181 Ga. App. 324 (352 SE2d 193) (1986), cited by the majority, is not applicable because it involved the validity of an arrest, and the four-judge plurality concluded the defendant's constitutional rights were not violated because a felony arrest may be made by a private citizen. In contrast, Georgia law expressly precludes the issuance of a search warrant to a private citizen. OCGA § 17-5-20 (b).

This court has long recognized that " ' "[p]roceedings for the issuance of search warrants are to be strictly construed, and every constitutional and statutory requirement must be fully met, including all formalities required by statute, before a valid search warrant may is-

sue. Moreover, a statute prescribing the method of issuing search warrants must be read and construed in the light of, and conform in all essential respects to, the provisions of the constitution granting immunity from unreasonable searches and seizures." [Cit.] It should be borne in mind that here we are dealing with a valuable guaranty, a part of the Bill of Rights, the subject matter of the Fourth Amendment to our national Constitution, and embodied in the Georgia Constitution. We, who have this right, must carefully guard it against infringement.' " *Pruitt v. State*, 123 Ga. App. 659, 664 (182 SE2d 142) (1971). I find the decision in *Hill* to be consistent with these principles, and accordingly would affirm the decision of the trial court.

I am authorized to state that Judge Pope joins in this dissent.

DECIDED DECEMBER 5, 1990 —
REHEARING DENIED DECEMBER 20, 1990 — 

*Harry N. Gordon, District Attorney, Gerald W. Brown, Assistant District Attorney*, for appellant.
*Cook, Noell, Tolley & Aldridge, Edward D. Tolley*, for appellee.