## A02A0823. THE STATE v. CALHOUN.
### (566 SE2d 447)

SMITH, Presiding Judge.

Jacquie Somer Calhoun was arrested and charged by accusation with DUI, OCGA § 40-6-391 (a) (1) and (k) (1); underage possession of alcohol, OCGA § 3-3-23 (a) (2); and improper turn, OCGA § 40-6-120 (a) (2). The State appeals from an order granting Calhoun's "Motion to Dismiss and/or in the Alternative to Suppress Evidence of Defendant's Purported Implied Consent Refusal." We agree with the State that the trial court erred in finding a "problem" with the stop of Calhoun's vehicle sufficient to grant her motions.

The evidence presented at the hearing on Calhoun's motion showed that an officer with the Gwinnett County Police Department DUI Task Force was on routine patrol on Pleasant Hill Road when he observed Calhoun's blue Miata, which was directly ahead of him in the left turn lane, make a "very wide, sweeping turn out to the right side of the roadway," into a yellow cross-hatched triangle. The turn brought the car into another lane, forcing the driver to make "a sharp, jerking motion back to the left" to return to her lane of travel.

The officer pulled Calhoun's vehicle over and asked Calhoun for her driver's license and proof of insurance. As he was standing at the driver's side window of Calhoun's car, he smelled the odor of alcohol coming from the car. When he asked Calhoun to step out of the car, he noticed that she was unsteady on her feet. He also determined

that the strong odor of alcohol was emanating from Calhoun. In addition, Calhoun's speech was "somewhat thick," her face was pale, her eyes were glazed, and she swayed when she walked. Calhoun was cooperative initially, but she became argumentative when the officer requested that she perform voluntary field evaluations. She refused initially, but eventually acceded to the officer's request, and the evaluations were performed. The officer detected six clues out of a possible six on the horizontal gaze nystagmus test. He testified that Calhoun transposed some of the letters in the alphabet evaluation, missed heel to toe, stepped off line, and lost her balance during the walk and turn evaluation and refused to take an alco-sensor test. In the officer's opinion, Calhoun was a less safe driver, and he placed her under arrest. He then read her the Georgia Implied Consent Warning for persons under 21 years of age and requested that she submit to a breath test. Calhoun agreed, and the officer transported her to the Gwinnett County Jail, where the Intoxilyzer machine was located. He observed Calhoun breathing in "short, choppy . . . puffs in the machine and not allowing it to get enough going into it." The test was run twice, and in each instance the printout read "insufficient sample."

At this point in the trial, the trial court recessed the hearing, both because defense counsel was experiencing medical problems and the Intoxilyzer operator had not yet arrived. Although the hearing reconvened several months later, the Intoxilyzer operator was absent.

Calhoun filed a motion to dismiss and/or to suppress, arguing in her amended motion to suppress that her turn was made in "a reasonable manner, completely within her lane of traffic." She argues that she was pulled over "despite an absence of any specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted such an intrusion" and without "any objective manifestation that she was, or was about to be, engaged in criminal activity." The trial court granted both motions, finding only that "there is a problem with the stop that merits granting Defendant's motions."

The State contends the trial court erred in its ruling because the arresting officer had sufficient articulable suspicion to conduct a brief investigatory stop of Calhoun's car. We agree.

We note initially that, as we read Calhoun's motions, only the motion to suppress implicates the stop. Calhoun's motion to dismiss is predicated upon issues surrounding Calhoun's refusal or inability to provide a sufficient breath sample for analysis. Calhoun's amended motion raises the issue of the validity of the stop of her car, but amends only the motion to suppress, not the motion to dismiss. The

rationale for the trial court's order is recited, and that rationale applies only to the motion to suppress.

We first address the grant of the motion to suppress, based on an unlawful stop. Calhoun alleged in her motion that the stop was unlawful because she had not violated any criminal law.[1] Her argument appears to presume that a criminal law must have been violated for the stop to have been valid. This is simply not the law.

In this case, the officer was the only witness who testified at the hearing. Calhoun did not present any evidence contradicting the officer's account of the stop. "When the evidence is uncontroverted and no issues of witness credibility are presented, we review de novo the trial court's application of the law to undisputed facts." (Citation omitted.) *State v. Hammang*, 249 Ga. App. 811 (549 SE2d 440) (2001). The primary purpose of traffic enforcement is the protection of the traveling public. So long as the stop was based upon conduct the officer observed, not on a mere "hunch," and it was not pretextual, arbitrary, or harassing, an officer may act on a legitimate concern for public safety in stopping a driver. *State v. Armstrong*, 223 Ga. App. 350, 351-352 (2) (477 SE2d 635) (1996). The behavior giving rise to an officer's reasonable suspicion need not be a violation of the law. Even if the driver's actions do not amount to a per se traffic violation, an officer may have a reasonable, articulable suspicion that a traffic offense was being committed. *Semich v. State*, 234 Ga. App. 89, 91-92 (b) (506 SE2d 216) (1998). We cannot require an officer to make immediate judgments regarding whether every element of a particular crime has been established before making brief stops. And the fact that it is later shown that some element of the crime was not satisfied will not invalidate the stop if the officer acted in good faith in stopping the car because he believed an unlawful act was committed. "The question to be decided is whether the officer's motives and actions at the time and under all the circumstances, including the nature of the officer's mistake, if any, were reasonable and not arbitrary or harassing." (Citation and punctuation omitted.) *Armstrong*, supra at 352.

Here, the State demonstrated facts from which we can determine that the stop was not pretextual, arbitrary, or harassing. It was not based upon a mere "hunch," but upon the officer's observation of erratic driving behavior. "No purpose of deterrence would be served by suppressing the evidence found in this case, which was the product of a stop prompted by the officer's legitimate concern for public safety." (Citation and punctuation omitted.) *Hammang*, supra. The trial court erred in granting Calhoun's motion to suppress.

---

[1] Calhoun has not filed a brief in this court.

Because the trial court's ruling appears to grant the motion to dismiss as well, we now address that motion. The motion to dismiss was based upon the circumstances surrounding the breath test. Calhoun argued that the accusation should be dismissed because she repeatedly asked for "another opportunity to take the test or to submit to an alternative method of testing or to obtain a test of her own choosing at her own expense," which requests were denied. Calhoun contended that these circumstances deprived her of due process of law "by eliminating her opportunity to gather exculpatory evidence during the limited window of availability," and that as applied, OCGA §§ 40-5-67.1, 40-5-153, and 40-6-392 are unconstitutional. The only rationale the trial court gave for granting the motions was that "there is a problem with the stop." The motion to dismiss, however, was not based upon the stop, but rather upon the circumstances surrounding the breath test. No evidence was presented showing that Calhoun was denied due process of law. The arresting officer testified that he read Calhoun the implied consent warning and that he was present when the breath tests were administered "in the seats that are directly in front of the Intox machine." He could see and hear Calhoun, and he testified that Calhoun did not request an independent test of her blood, breath, urine, or other bodily substance. No other witnesses testified. No evidence was presented that Calhoun requested an independent test of her own choosing, which was denied by the officers. No basis therefore existed for granting the motion to dismiss. The trial court's ruling must be reversed in its entirety.

*Judgment reversed. Eldridge and Ellington, JJ., concur.*

DECIDED JUNE 12, 2002.

*Gerald N. Blaney, Jr.*, Solicitor-General, *Jeffrey P. Kwiatkowski, Gary S. Vey*, Assistant Solicitors-General, for appellant.