A05A0514. THE STATE v. DURR.
(618 SE2d 117)

ADAMS, Judge.

A campus police officer observed Terrence Durr weaving within his lane on a street located within the officer's campus jurisdiction, but he did not execute a traffic stop until shortly after leaving his jurisdiction. The stop eventually led to an arrest for driving under the

influence of alcohol. Durr moved to suppress the fruits of the traffic stop, and the trial court granted the motion on the ground that the officer was not authorized to leave his jurisdiction to make a traffic stop based on only articulable suspicion of a criminal offense. The State appeals that decision.

The State does not dispute the facts found by the trial court. "When the evidence is uncontroverted and no issues of witness credibility are presented, we review de novo the trial court's application of the law to undisputed facts." (Citation omitted.) *State v. Hammang*, 249 Ga. App. 811 (549 SE2d 440) (2001).

The trial court found that the sole basis for the traffic stop was "the Defendant's alleged weaving within his lane"; that the traffic stop was not initiated until after the officer had followed Durr outside of the officer's jurisdiction (citing OCGA §§ 20-3-72; 20-8-1; 20-8-2); and that "there were no violations of the criminal or traffic laws committed by the Defendant and observed by the arresting officer during the time that the officer was following and observing the Defendant." The later finding, as the court indicated, is based on the fact that weaving within a lane is not a violation of any traffic or criminal law. See *Semich v. State*, 234 Ga. App. 89, 90-91 (506 SE2d 216) (1998).

1. Although the trial court did not specifically decide whether Durr's weaving gave the officer articulable suspicion to stop the car, we hold that it did. As noted by the trial court, it has been held that weaving within a lane may be justification for a traffic stop because it could indicate that the driver is under the influence of alcohol. See *Veal v. State*, 273 Ga. App. 47, 49 (614 SE2d 143) (2005) (driving 25 mph in a 55-mph zone and weaving within a lane presented articulable suspicion for a stop); *Smith v. State*, 236 Ga. App. 548, 549 (1) (512 SE2d 19) (1999) (weaving within a lane raised a reasonable suspicion that the driver was driving while intoxicated), rev'd on separate grounds, 272 Ga. 83 (526 SE2d 59) (2000); *Semich*, 234 Ga. App. at 92-93 (weaving within a lane and changing direction late at night in response to police activity ahead presented articulable suspicion for a stop).

The case of *State v. Calhoun*, 255 Ga. App. 753 (566 SE2d 447) (2002), supports our decision. In that case, when making a left turn the defendant made a " 'very wide, sweeping turn out to the right side of the roadway,' " into another lane, "forcing the driver to make 'a sharp, jerking motion back to the left' to return to her lane of travel." Id. Although the driver's actions did not constitute a traffic offense, we reversed the trial court's determination that the officer did not have articulable suspicion for the stop. Id. at 755.

Like in *Calhoun*, in the present case the State presented evidence to show that the stop was based on observed conduct which led

the officer to suspect the driver might be under the influence of alcohol. Id. No purpose of deterrence would be served by suppressing the evidence based on a finding that weaving within one's lane did not constitute articulable suspicion of driving under the influence of alcohol. Id. Based on *Calhoun* and the other cases cited above, we hold that the officer had articulable suspicion for the stop.

Durr's argument that the officer began following him long before he entered the campus and for no reason is not relevant. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U. S. 806, 813 (II) (A) (116 SC 1769, 135 LE2d 89) (1996). See also *State v. Kirbabas*, 232 Ga. App. 474, 480-481 (502 SE2d 314) (1998).

2. The remaining question is whether a campus police officer who gains articulable suspicion within his campus jurisdiction may stop the driver outside of that jurisdiction.

(a) As an initial matter, both parties contend that two separate statutes govern the authority of campus officers to make arrests. The State asserts, and Durr apparently agrees, that OCGA § 20-8-1 et seq. applies only to nonstate operated colleges and universities, and that another Code section, OCGA § 20-3-72, exclusively applies to colleges and universities that are part of the University System of Georgia governed by the Board of Regents. The two parties then argue about the extent of a university system officer's authority to arrest off campus under OCGA § 20-3-72 based on an unsupported assumption that the university at issue in this case is a part of the University System of Georgia. As will be shown below, because the authority of campus police to arrest outside their jurisdiction in hot pursuit is the same for all public and private, college or university campus police, that fact is not material to our decision.

Lieutenant Steven Douglas Bennett is an officer with the Southern Polytechnic State University Police Department, and he is a certified police officer. Although it is contended that the university is a part of the University System of Georgia governed by the Board of Regents, there is nothing in the record to prove it.[1] See generally Ga. Const. of 1983, Art. VIII, Sec. IV, Par. I. The trial court noted that it did not reach the issue.

Chapter 8 of Title 20 of the Georgia Code establishes the powers of campus policemen in this state. OCGA § 20-8-1 et seq. The first Code section provides that the chapter is applicable to colleges and universities, which are defined as "accredited, nonproprietary, public

---

[1] "It is an ancient and honored tenet of law that we do not take evidence from the briefs of parties, we do not get evidence from outside the record, and we do not accept assertions of fact or evidence which were not before the trial court." (Citations and punctuation omitted.) *Demetrios v. State*, 246 Ga. App. 506, 510, n. 14 (541 SE2d 83) (2000).

or private educational institution[s] of higher learning located in this state." OCGA § 20-8-1 (3). See also Ga. L. 1977, p. 1160. Colleges and universities in the state university system fit this definition: they presumably are accredited; they are nonproprietary, i.e., not owned by a private entity; and they are public educational institutions of higher learning. Indeed, the Board of Regents has "the exclusive authority to create new public colleges, junior colleges, and universities in the State of Georgia." Ga. Const. of 1983, Art. VIII, Sec. IV, Par. I.

The second Code section grants college and university and certain other campus police officers their powers, and it does so without excluding university system officers. OCGA § 20-8-2. The third Code section provides that as a condition precedent to exercising those powers, campus officers must be certified by the Georgia Peace Officer Standards and Training Council ("POST"). OCGA § 20-8-3. The legislature then provided an "exemption," which somewhat ambiguously states:

> A campus policeman exercising the power of arrest pursuant to Code Section 20-3-72 providing campus policemen and other security personnel of the University System of Georgia with arrest powers for offenses committed upon university system property shall be *exempt* from this chapter.

(Emphasis supplied.) OCGA § 20-8-4.

Although the wording states that university system officers making arrests are exempt "from this chapter," this Court has already noted that the provision exempts university system officers only from the requirement of POST certification when making arrests for offenses occurring on campus. *State v. Harber*, 198 Ga. App. 170, 172 (1) (401 SE2d 57) (1990).[2] Compare Op. Atty. Gen. 90-11 (1990) (stating that Chapter 8 of Title 20 has no application to university system personnel).[3] This construction is consistent with the basic structure of OCGA § 20-8-1 et seq. and with the definition of "exempt," which means "[f]ree or released from a duty or liability to which others are held." Black's Law Dictionary (8th ed. 2004). Moreover, the university system and its officers are specifically

---

[2] As also noted in *Harber*, "there is nothing in the statute which prohibits them from seeking and obtaining such certification." (Emphasis omitted.) *Harber*, 198 Ga. App. at 172. And by obtaining such certification, a campus officer thereby becomes an "officer of this state." Id.

[3] "[W]hile opinions of the Attorney General are persuasive authority, they are not binding on the appellate courts. [Cit.]" *Wheeler County Bd. of Tax Assessors v. Gilder*, 256 Ga. App. 478, 482 (2) (568 SE2d 786) (2002).

referenced in OCGA § 20-8-6, which is more evidence supporting the construction that all of Chapter 8 of Title 20 applies to university system officers subject to the limited exemption discussed above.

OCGA § 20-3-72, which predates OCGA § 20-8-1 et seq., gives university system officers power to arrest for offenses committed on or near campus as follows:

> The campus policemen and other security personnel of the university system who are regular employees of the system shall have the power to make arrests for offenses committed upon any property under the jurisdiction of the board of regents and for offenses committed upon any public or private property within 500 yards of any property under the jurisdiction of the board.

OCGA § 20-3-72. See also Ga. L. 1966, p. 370. As shown from above, this Code section simply gives university system officers the authority to arrest without being POST certified.

In short, the authority of all POST-certified campus officers to arrest someone in hot pursuit based on articulable suspicion gained on campus must be resolved by looking to Chapter 8 of Title 20 of the Georgia Code.

(b) OCGA § 20-8-1 et seq. grants campus policemen employed by public or private colleges and universities of this State who are certified by POST the same law enforcement powers, including the power of arrest, as a law enforcement officer of the local government with police jurisdiction over such campus. OCGA §§ 20-8-1; 20-8-2; 20-8-3.[4] See also Ga. L. 1977, p. 1160. The campus is defined, in part, as the grounds and buildings owned by the college or university and any public or private property within 500 yards thereof. OCGA § 20-8-1.

In this case, the traffic citation indicates that the offense occurred in Cobb County, possibly within the city of Marietta. Under OCGA § 20-8-1 et seq., Officer Bennett would have the same power of arrest as either a Marietta city police officer or a Cobb County officer whose territory was the campus as defined above. And county and municipal officers are allowed to arrest outside their jurisdictional territory if they are in hot pursuit of a suspected offender. *Hastings v. State*, 211 Ga. App. 873, 874 (1) (441 SE2d 83) (1994); *Poss v. State*, 167 Ga. App. 86, 87 (1) (305 SE2d 884) (1983).[5] This is true even

---

[4] This chapter also applies to schools or training facilities operated by or under the authority of the State Board of Education. See OCGA §§ 20-8-1; 20-8-5.

[5] Municipal and county police officers are prohibited by the constitution from exercising their police powers outside of their jurisdictional boundaries except in accordance with a

though the officer has only articulable suspicion of a traffic or criminal violation, rather than probable cause. See *Margerum v. State*, 260 Ga. App. 398 (579 SE2d 825) (2003); *Hastings*, 211 Ga. App. at 874.

In *Margerum*, hot pursuit was authorized where the officer was responding to a be-on-the-lookout, which is information that, together with a suspect who roughly fits the description, gives an officer articulable suspicion to stop. *Garlington v. State*, 268 Ga. App. 264, 270 (3) (601 SE2d 793) (2004). See also *Hastings*, 211 Ga. App. at 874. Thus, if Officer Bennett was in hot pursuit of Durr when he left the campus, the arrest was proper.

We do not read *Delong v. State*, 185 Ga. App. 314 (363 SE2d 811) (1987), to be inconsistent with this conclusion. In that case, this Court addressed whether an officer who witnessed a traffic offense within his jurisdiction could arrest outside the jurisdiction. In reaching the same conclusion as we have, this Court wrote in terms of the facts presented:

> a city police officer who observes a person commit a traffic violation within the geographic limits of the officer's jurisdiction is authorized to initiate pursuit, and if necessary, go outside the city's geographical limits in order to effect an arrest for traffic violations committed in the officer's presence.

Id. at 315. This language cannot be read to limit hot pursuit to only those situations where the officer has probable cause to arrest, rather, it merely states the rule in terms of the facts presented in that case and the case cited therein.

So, regardless of whether Southern Polytechnic State University is a part of the state university system, if Officer Bennett was in hot pursuit of Durr when he left the campus, the arrest was proper. The trial court did not address whether the facts warranted a conclusion that Officer Bennett was in hot pursuit. We therefore reverse and remand for further proceedings consistent with this opinion.

*Judgment reversed and case remanded. Ellington, J., concurs. Smith, P. J., concurs in judgment only.*

---

contract between another jurisdiction, or "[u]nless otherwise provided by law." Ga. Const. of 1983, Art. IX, Sec. II, Par. III (b). Another limitation on a municipal officer's extraterritorial power is found in OCGA § 40-13-30, which provides, in part, that officers of an unincorporated municipality "shall have no power to make arrests beyond the corporate limits of such municipality unless such jurisdiction is given by local or other law." But, a provision of "other law" that provides an exception to both rules is the common law authorizing an officer, including municipal officers, to arrest outside their jurisdictional territory if they are in hot pursuit of a suspected offender. *Hastings*, 211 Ga. App. at 874 (1).

DECIDED JULY 14, 2005.

*Barry E. Morgan, Solicitor-General, Jessica K. Moss, John W. Nichols, Assistant Solicitors-General*, for appellant.
*Roger J. Rozen*, for appellee.