## A99A1626. DARBY v. THE STATE.
(521 SE2d 438)

ELDRIDGE, Judge.

Appellant Allan Walter Darby was arrested and charged with operating a motor vehicle after revocation of his motor vehicle license as a habitual violator and giving a false date of birth to a law enforcement officer. After a bench trial, he was found guilty of operating a motor vehicle after revocation of his motor vehicle license as a habitual violator.[1] Appellant appeals his conviction and the denial of his motion to suppress.

At approximately 6:00 p.m. on October 1, 1998, Officer David M. Bradbury initiated a traffic stop of appellant in DeKalb County. Officer Bradbury testified that he was driving behind defendant's car on South Hairston Road when he noticed a crack at least a foot long in the windshield of defendant's car. Officer Bradbury testified that the crack was visible from the driver's right shoulder to the left shoulder of the passenger. Based on his observation of the crack, Officer Bradbury pulled over appellant's car. The officer testified that the cracked windshield was the only reason he stopped appellant's car; he observed no other traffic violations and no dangerous driving.

The officer further testified that upon stopping appellant, he requested to see his driver's license and proof of insurance. Appellant provided the officer with proof of insurance but stated that he did not have his driver's license in his possession. Officer Bradbury then requested appellant's name and date of birth. In response to Officer Bradbury's inquiry, appellant stated his name was Walter Darby and his date of birth was August 19, 1960. A computer check indicated that a driver's license had not been issued to anyone with the name and birth date appellant gave to Officer Bradbury.

Two other police officers arrived to assist Officer Bradbury. Officer Bradbury testified that one of the other officers handed him papers which gave defendant's complete name and indicated that he had the status of habitual violator. Appellant then gave Officer Bradbury a date of birth of August 18, 1960. When Officer Bradbury ran a computer check using appellant's full name and correct date of birth, he determined that appellant's license was suspended as a habitual violator. The officer then arrested appellant. After appellant's arrest, a probationary license was found in appellant's wallet. However, a computer check showed the probationary license had expired on May 30, 1998.

1. Appellant argues that the trial court erred in failing to grant his motion to suppress as Officer Bradbury lacked probable cause or

---

[1] The trial court found appellant not guilty of giving a false date of birth to a law enforcement officer.

articulable suspicion to stop his vehicle.

In reviewing a motion to suppress,

> [t]he evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them.

*Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990).

At the hearing on the motion to suppress, appellant testified that the crack in his windshield was a starburst or spider web pattern about two inches in width, with one linear crack which at the time of the stop was about two to three inches long and, at the time of the hearing, had increased to about six inches in length. On cross-examination, Officer Bradbury was shown a picture of appellant's windshield. Officer Bradbury testified that the starburst appeared to be between one and one-half and two inches in width, but that cracks appeared to spider web out beyond the actual starburst. Appellant argues that because OCGA § 40-8-73 (e) provides that "[n]o motor vehicle shall be operated with a windshield or rear window having a starburst or spider webbing effect greater than three inches by three inches," that he was not in violation of the statute and that the stop by Officer Bradbury was pretextual.

> In *Terry* [*v. Ohio*, 392 U. S. 1, 23 (88 SC 1868, 20 LE2d 889) (1968)], the court stated: momentary detention and questioning are permissible if based upon specific and articulable facts, which, taken together with rational inference from those facts, justify a reasonable scope of inquiry not based on mere inclination, caprice or harassment. An authorized officer may stop an automobile and conduct a limited investigative inquiry of its occupants, without probable cause, if he has reasonable grounds for such action — a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing.

(Citation and punctuation omitted.) *Garmon v. State*, 235 Ga. App. 671, 676 (510 SE2d 350) (1998). In determining whether an investigatory stop met these requirements, "we examine whether the detaining officer had a particularized and objective basis for reasonably suspecting that the particular individual stopped was or had been engaged in criminal activity." (Footnote omitted.) *Thomason v. State*,

268 Ga. 298, 301 (2) (a) (486 SE2d 861) (1997).

Applying these principles here, we conclude that Officer Bradbury's initial stop of appellant was supported by reasonable and articulable suspicion. Before an officer can charge an individual with a violation of OCGA § 40-8-73 (e), the officer must make a determination that the break in the vehicle's windshield has a starburst or webbing effect greater than three inches by three inches. Often, such a determination cannot be made absent a traffic stop, so that the officer may examine and measure the break in the windshield. "[A]n investigative stop can be utilized to determine *if* a law is being broken." (Emphasis in original.) *Jordan v. State*, 223 Ga. App. 176, 178 (1) (477 SE2d 583) (1996). Officer Bradbury, who was traveling behind appellant, testified that he was able to see a crack of more than a foot in length in appellant's windshield. A rational inference could be drawn by Officer Bradbury that such crack emanated from a starburst. Officer Bradbury's observation of such crack gave him a specific, articulable reason to stop appellant's vehicle to investigate if such crack emanated from a starburst and if such starburst was in violation of OCGA § 40-8-73.

2. Appellant argues that the trial court erred by failing to suppress and exclude from admission at trial evidence that was seized in violation of the Fourth Amendment of the United States Constitution and the correlative provisions of the 1983 Constitution of the State of Georgia.

(a) Having found in Division 1 that Officer Bradbury was justified in making a brief investigative *Terry* stop of appellant's vehicle to determine if the crack in appellant's windshield violated OCGA § 40-8-73, Officer Bradbury's actions in initially stopping appellant did not violate the Fourth Amendment of the United States Constitution. *Davis v. State*, 236 Ga. App. 32-33 (510 SE2d 889) (1999); *Brantley v. State*, 226 Ga. App. 872, 873 (487 SE2d 412) (1997); see also *Whren v. United States*, 517 U. S. 806 (116 SC 1769, 135 LE2d 89) (1996). "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." (Citation and punctuation omitted.) *Coley v. State*, 177 Ga. App. 669, 670 (341 SE2d 9) (1986).

Having effected a valid traffic stop, the officer was authorized to request and examine appellant's driver's license (or in this case, request appellant's name and date of birth, since appellant stated that he had left his driver's license at home), vehicle registration, and proof of insurance; to run a computer check on such documents; and to question appellant regarding the break in his windshield. See *Rogers v. State*, 206 Ga. App. 654, 657 (426 SE2d 209) (1992); *Raney v. State*, 186 Ga. App. 758, 759 (368 SE2d 528) (1988). Appellant was

placed under arrest after the computer check showed that appellant's driver's license had been suspended because he was a habitual violator. The fact that the officer did not charge appellant with a violation of OCGA § 40-8-73 is immaterial. See *Buffington v. State*, 228 Ga. App. 810 (492 SE2d 762) (1997). Under the facts of this case, there was no violation of appellant's Fourth Amendment rights.

(b) On appeal, appellant argues that, in the instance of pretextual stops, the Georgia Constitution should be interpreted to provide greater protection to citizens than the Fourth Amendment of the United States Constitution.

> This is a question of constitutional construction which will have to be decided by the Supreme Court of Georgia. Because the [trial] court did not err in finding no pretext, this issue is not reached for review and no transfer to the Supreme Court is required. Moreover, the state constitutional question, although raised in the written motion, was not explicitly ruled on below, which also precludes review.

(Punctuation and footnotes omitted.) *Davis v. State*, supra at 32-33; *Brantley v. State*, supra at 873. See also Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (Supreme Court has exclusive jurisdiction of interpretation of state constitution); *Marr v. Ga. Dept. of Ed.*, 264 Ga. 841 (452 SE2d 112) (1995) (party must elicit specific ruling on constitutional question to preserve it for appellate review).

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JULY 30, 1999.

*Charles T. Magarahan, Aubrey T. Villines, Jr.*, for appellant.
*J. Tom Morgan, District Attorney, James M. McDaniel, Barbara B. Conroy, Assistant District Attorneys*, for appellee.