A07A1295. GLENN v. THE STATE.
(648 SE2d 177)

BLACKBURN, Presiding Judge.

Following a bench trial, Barry Glenn appeals his conviction of possession of methamphetamine,[1] contending that the trial court erred in denying his motion to suppress. He argues that the arresting officer discovered the methamphetamine during an allegedly improper seizure of other suspected contraband. We disagree and affirm.

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility . . . must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

---

[13] Id.

[14] See *Meister*, supra at 851 (2).

[1] OCGA § 16-13-30 (a).

(Citations, punctuation and emphasis omitted.) *Tate v. State.*[2]

So viewed, the evidence showed that, while investigating a burglary, police saw Glenn drive by with a ten-inch "starburst" crack in his windshield. The officers activated their emergency lights and followed Glenn into his nearby driveway. As an officer requested Glenn's driver's license and registration, the officer noticed that Glenn was "very nervous" and "his hands were shaking violently." The officer asked Glenn to step to the rear of the vehicle, and a second officer asked Glenn if he had any weapons, to which Glenn replied that he had a knife in his front pocket. As the second officer retrieved the knife and performed a pat-down search, the first officer, looking through the front passenger window of the vehicle, spotted a metal pipe that he believed to be a marijuana pipe. The first officer then requested that the second officer confirm that the pipe looked like a marijuana pipe, and the second officer agreed.

Glenn was placed in handcuffs, and the first officer proceeded to retrieve the object from the front passenger seat of Glenn's vehicle. As the officer entered the vehicle, he spotted a glass methamphetamine pipe in a knit cap on the parking brake between the front seats of the vehicle. The officers then formally placed Glenn under arrest and searched the vehicle, finding in the glass pipe a rolled up bag containing suspected methamphetamine. The officers subsequently determined that the suspected marijuana pipe was actually a pipe fitting not useable for smoking marijuana.

Glenn was charged with possession of methamphetamine, and, after his motion to suppress was denied, Glenn was found guilty in a stipulated bench trial. Glenn now appeals the denial of his motion to suppress, contending that the police lacked justification to enter his vehicle, and, because the methamphetamine was found incident to that entry, the methamphetamine should have been suppressed.

At the outset, we note that it is undisputed that the initial traffic stop in Glenn's driveway was justified by the officers' observation of the ten-inch crack in Glenn's windshield. See OCGA § 40-8-73 (e) ("[n]o motor vehicle shall be operated with a windshield or rear window having a starburst or spider webbing effect greater than three inches by three inches"); *Darby v. State.*[3] Therefore, police lawfully stopped Glenn in his driveway to conduct the brief investigatory detention.[4]

---

[2] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

[3] *Darby v. State*, 239 Ga. App. 492, 494 (1) (521 SE2d 438) (1999).

[4] We also note that "[i]t is of no consequence to this inquiry whether [Glenn] was ultimately cited for" the windshield violation. *Hines v. State*, 214 Ga. App. 476, 478 (448 SE2d 226) (1994).

During the investigation, Glenn explicitly denied consent to having his vehicle searched. Glenn concedes that the initial viewing of the metal pipe was within the officer's authority as he was authorized by the traffic stop to be next to the vehicle. See *State v. Hodges.*[5] However, Glenn challenges the officer's authority to enter his vehicle to seize the suspected metal marijuana pipe, which was observed as one officer spoke to Glenn outside of his vehicle.

> The plain view doctrine authorizes a police officer to seize an illegal item if the officer is lawfully in a place where he can see the item and if he has a lawful right of access to it. An officer gains lawful access to an item in plain view by obtaining a search warrant, obtaining consent to search, or the existence of exigent circumstances. Furthermore, it is well settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.

(Citations, punctuation and footnotes omitted.) *Wesson v. State.*[6] With respect to a vehicle, "in cases where there was probable cause to search a vehicle[,] a search is not unreasonable if based on facts that would justify the issuance of a warrant, *even though a warrant has not been actually obtained.*" (Punctuation omitted; emphasis in original.) *Benton v. State.*[7] Therefore, the officer's entry into Glenn's vehicle was justified if the officer had probable cause. See id. at 245 (1) (emphasizing that the plain view doctrine "requires . . . a warrant, consent[,] or some exigency [to] give the officer a lawful right of access to the item in plain view"); *Chambers v. Maroney.*[8]

> In determining whether the officer had probable cause to believe that the [metal pipe] was [contraband], the law is that probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability that incriminating evidence is involved is all that is required.

---

[5] *State v. Hodges*, 184 Ga. App. 21, 24 (360 SE2d 903) (1987).

[6] *Wesson v. State*, 279 Ga. App. 428, 431-432 (2) (631 SE2d 451) (2006).

[7] *Benton v. State*, 240 Ga. App. 243, 245 (2) (522 SE2d 726) (1999).

[8] *Chambers v. Maroney*, 399 U. S. 42, 48 (II) (90 SC 1975, 26 LE2d 419) (1970).

(Punctuation omitted.) *Miller v. State*.[9]

Here, the officer described the pipe as "a piece of copper pipe — copper, brass fitting-type thing that was — it had black electrical tape wrapped around it. . . . I believed it to be a marijuana smoking device. I've seen them like that before with the electrical tape wrapped around them, and that's what I believed it to be at the time." Moreover, the officer asked another officer to confirm his belief, which the other officer did. Therefore, based on the totality of the circumstances, *Fortson v. State*,[10] including the unusual metal pipe, its resemblance to other pipes the officer knew to be used for smoking marijuana, the officer's experience in the drug interdiction unit, and Glenn's nervous behavior, the evidence supported the trial court's ruling that the officer was authorized to enter Glenn's vehicle based on the officer's viewing of the metal pipe. See *Benton v. State*, supra, 240 Ga. App. at 245 (2) (delineating limits of the plain view doctrine and relying on the automobile exception). Accord *State v. Hodges*, supra, 184 Ga. App. at 24-25 (relying on plain view and in part on exigency associated with automobile); *Starks v. State*[11] (affirming denial of suppression where officer opened car door to seize suspected marijuana in plain view in back seat); *Bogan v. State*[12] (affirming denial of suppression of cocaine seized, because "officers . . . were constitutionally entitled to walk past the car . . . and could observe the cocaine from that vantage").

In so ruling, we note that this case is distinct from those such as *Mobley v. State*[13] and *Humkey v. State*,[14] in which the contraband itself was in an opaque bag or otherwise concealed from plain view, and therefore was not discovered until after a search. Here, the suspected contraband was open to view from outside the vehicle's window. Therefore, based on the officer's experience and the object's similarity to other marijuana pipes seen by the officer, its incriminating nature was immediately apparent to the officer. See *Coolidge v. New Hampshire*.[15]

Based on the officer's authority to enter Glenn's vehicle, he was lawfully in a position to observe in plain view the glass pipe contain-

---

[9] *Miller v. State*, 261 Ga. App. 618, 620 (1) (583 SE2d 481) (2003).

[10] *Fortson v. State*, 277 Ga. 164, 167 (3) (587 SE2d 39) (2003).

[11] *Starks v. State*, 204 Ga. App. 185, 186-187 (2) (419 SE2d 75) (1992).

[12] *Bogan v. State*, 270 Ga. App. 162, 164 (1) (605 SE2d 872) (2004).

[13] *Mobley v. State*, 130 Ga. App. 80, 82-83 (3) (202 SE2d 465) (1973), disapproved on other grounds, *Patterson v. State*, 238 Ga. 204, 207 (232 SE2d 233) (1977).

[14] *Humkey v. State*, 129 Ga. App. 750 (201 SE2d 190) (1973).

[15] *Coolidge v. New Hampshire*, 403 U. S. 443, 466 (II) (C) (91 SC 2022, 29 LE2d 564) (1971).

ing methamphetamine. Accordingly, the trial court did not err in denying Glenn's motion to suppress the pipe or the methamphetamine it contained.

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

DECIDED JUNE 15, 2007.

*James M. Adam*, for appellant.

*Lee Darragh, District Attorney, Wanda L. Vance, Assistant District Attorney*, for appellee.