A07A0601. THE STATE v. RHEINLANDER.
(649 SE2d 828)

SMITH, Presiding Judge.

The State appeals the grant of Robb Rheinlander's motion to suppress evidence of Rheinlander's refusal to take a breath test in connection with charges of driving under the influence of alcohol. It contends that the trial court erred in finding that the arresting officer lacked sufficient reasonable and articulable suspicion to make an initial investigative stop of Rheinlander. We agree and therefore reverse.

"When the evidence is uncontroverted and no issues of witness credibility are presented, we review de novo the trial court's application of the law to undisputed facts. [Cit.]" *State v. Hammang,* 249 Ga. App. 811 (549 SE2d 440) (2001). At the hearing on the motion to suppress, the officer who made the traffic stop was the only witness regarding the initial stop of Rheinlander.[1] At approximately 2:00 a.m., the officer was on patrol in a "slick top" patrol car, without a light bar on top but with two lights in the rear and flashing strobes in the brake lights. On North Druid Hills Road near Clairmont Road, the officer saw a traffic stop in progress in the far right turn lane and stopped to see if that officer needed assistance, pulling up in the through lane next to him and turning on his emergency equipment. As he was speaking with the second officer, the first officer looked in his rear-view mirror and saw a vehicle approaching his patrol car in his lane, from behind. While he watched, expecting that the vehicle would move over, it continued to approach, then "all of a sudden at the last minute he just changes lanes, kind of had me a little anxious."

The first officer testified that the vehicle got within "5 to 10 feet" of the rear of his patrol car before suddenly changing lanes, although he could not say the exact distance, that it was close enough to alarm him and "got my adrenaline going," and that it "almost hit me." After the vehicle passed the police officers, it struck the yellow line, did not

---

[1] The only other witness was a second officer who arrived on the scene after the stop and administered a field sobriety test.

brake at first, then corrected and returned to the center of the lane. The officer decided to follow the vehicle, and it "continued to drift in his lane" until he engaged his emergency equipment and stopped it.

> If the officer acting in good faith believes that an unlawful act has been committed, his actions are not rendered improper by a later legal determination that the defendant's actions were not a crime according to a technical legal definition or distinction determined to exist in the penal statute. The question to be decided is whether the officer's motives and actions at the time and under all the circumstances, including the nature of the officer's mistake, if any, were reasonable and not arbitrary or harassing.

(Citations and punctuation omitted.) *Hammang*, supra, 249 Ga. App. at 811. Here, the trial court based its decision primarily on its assessment of Rheinlander's perceptions of the ongoing traffic stop as he approached from behind in the dark, particularly what the trial court considered to be the reduced visibility of the "slick top" cruiser without a light bar.[2] The trial court concluded that Rheinlander did not "weave, speed, go through a red light, or commit any other traffic violation" *after* almost hitting the officer's car, but the trial court never rejected any of the officer's earlier testimony as untruthful or unbelievable, simply concluding that it "must be analyzed in the context of the total facts and circumstances."

The trial court's conclusion that Rheinlander could have had an innocent explanation for his last-minute swerve to avoid the "slick top" car goes to the question of his ultimate guilt or innocence. This is, however, not the dispositive question on a motion to suppress, in which the court must determine whether the *police officer* had an articulable suspicion that the defendant was involved in some illegal activity. The driver's actions need not amount to a traffic violation, so long as the officer has a "reasonable, articulable suspicion that a traffic offense was being committed. [Cit.]" *State v. Calhoun*, 255 Ga. App. 753, 755 (566 SE2d 447) (2002). "The question to be decided is whether the officer's motives and actions at the time and under all the circumstances, including the nature of the officer's mistake, if any, were reasonable and not arbitrary or harassing." (Citations and punctuation omitted.) Id.

---

[2] In concentrating on whether the "slick top" patrol car could be seen by the defendant, however, the trial court ignores the undisputed presence of a standard patrol car with its lights illuminated, parked right beside the other patrol car.

When approaching an emergency vehicle with its lights illuminated, drivers have the duty to change to a nonadjacent lane or to slow down and be prepared to stop. OCGA § 40-6-16 (a). By failing to change lanes and then approaching so closely as to have to swerve abruptly to avoid the officer's car, the defendant appears to have violated this Code section, regardless of whether he kept control of his car or left his lane. He came so close to the patrol car that the police officer believed he "almost hit" him. We have held that testimony that a driver "almost hit" an officer standing by the side of the road is sufficient evidence to support a *conviction* for reckless driving. *Graves v. State*, 280 Ga. App. 420, 421 (634 SE2d 186) (2006). See also *State v. Warren*, 256 Ga. App. 185 (568 SE2d 120) (2002) (physical precedent only) (articulable suspicion when officer had to brake and pull over to avoid colliding with defendant merging into his lane).[3]

Here, the undisputed facts demonstrate that the officer had an articulable suspicion sufficient to stop the defendant to inquire further. "No purpose of deterrence would be served by suppressing the evidence found in this case, which was the product of a stop prompted by the officer's legitimate concern for public safety." (Citation and punctuation omitted.) *Hammang*, supra, 249 Ga. App. at 811. The trial court therefore appears to have had no legal basis to rule as it did, and we must reverse.

*Judgment reversed. Andrews, P. J., Johnson, P. J., Miller, Ellington and Adams, JJ., concur. Barnes, C. J., dissents.*

BARNES, Chief Judge, dissenting.

I respectfully dissent from the majority's reversal of the trial court's grant of Rheinlander's motion to suppress. The majority disregards the trial court's credibility determination and further ignores factual determinations made by the trial court concerning Rheinlander's driving.

The State argues, and the majority seems to agree, that the trial court misconstrued and ignored the testimony and evidence presented at the hearing, and failed to consider the totality of the circumstances surrounding the stop, including that it was 2:00 a.m., the officer's 18 years of experience, and the testimony that the officer's patrol car had flashing strobes in the brake lights. It further maintains that the trial court's factual finding that Rheinlander might have had difficulty seeing the police vehicle because it was not

---

[3] The dissent cites the "right for any reason" rule with reference to a civil summary judgment. *City of Gainesville v. Dodd*, 275 Ga. 834 (573 SE2d 369) (2002). But that rule is not applicable here, both because the trial court erred in applying the law to undisputed facts and because, contrary to the dissent's contention, the issue of Rheinlander's near-miss of the officer's patrol car was raised below and argued by counsel for both parties.

equipped with exterior lights was erroneous because the evidence showed that there was exterior illumination from the strobe lights located on the brake lights.

Pretermitting whether the trial court incorrectly found that the interior illumination may have prohibited Rheinlander from seeing the patrol car, its ruling was based upon finding that the cumulative facts did not establish reasonable articulable suspicion sufficient to support the stop. The officer testified that Rheinlander never went into the other lane, but struck the yellow line — once when Rheinlander's car passed his patrol car, and at some other time before the officer stopped the car. He testified that he observed no other indication of wrongdoing. Moreover, contrary to the majority's finding that Rheinlander "got within '5 to 10 feet' of the rear of [the officer's] patrol car before suddenly changing lanes," the officer actually testified that "I couldn't tell you if it was 5 to 10 feet. But with all those blue lights going he had ample room to change lanes."

The majority relies heavily upon the officer's testimony about Rheinlander's proximity to his cruiser before he switched lanes, suggesting that Rheinlander "appears to have violated [OCGA § 40-6-16 (a)]" (when approaching emergency vehicles, drivers have duty to stop, slow down, or change lanes). Yet, the evidence shows that the officer did not stop Rheinlander for this supposed infraction. The officer testified that he watched Rheinlander's car go downhill after it changed lanes, then "he strikes the yellow line . . . he corrects and comes back over. And then I said, well, to myself, I said you know you almost hit me." The officer, at that point, decided to follow Rheinlander "not going real fast, the speed limit is 40 miles an hour, I believe through there. I caught up to him at Hillcrest at about Willaby, and continued to follow him." In fact, the officer followed Rheinlander until he saw the car "drift" in the lane again, and then he turned on his blue lights to initiate the stop. The officer's action, or lack thereof, did not indicate that Rheinlander's stop was predicated on any violation of OCGA § 40-6-16 (a), or the officer's concern about Rheinlander "almost hit[ting]" him. If this were the case, the officer would have stopped Rheinlander immediately after the lane change.

Moreover, it was never argued below or to this Court that Rheinlander violated OCGA § 40-6-16 (a). While we have under certain circumstances applied the "right for any reason" rule to reach issues unaddressed by either party in order to affirm a judgment as right for any reason, it does not follow that we "apply [the] 'wrong for any reason' rule to reverse incorrect rulings on issues not raised or ruled upon in the trial court. *City of Gainesville v. Dodd*, 275 Ga. 834 (573 SE2d 369) (2002)." *Lowery v. Atlanta Heart Assoc.*, 266 Ga. App. 402, 405 (2) (597 SE2d 494) (2004). Thus, contrary to the majority's statement, my concern is not the "right for any reason" rule, but the

majority's application of what can only be termed the "wrong for any reason" rule. It is not the responsibility of this Court to make arguments for the prosecution on appeal which the prosecution never asserted in the trial court.

In its order the trial court found that Rheinlander did not "weave, speed, go through a red light, or commit any other traffic violation, nor did [he] exhibit any other manifestations of dangerous driving." The trial court further found that "*although* the officer testified that [Rheinlander] came too close to the rear of the officer's vehicle, the officer's subjective belief must be analyzed in the context of the total facts and circumstances." The trial court either did not believe the testifying officer or chose to draw inferences from the evidence to which we must defer. As noted in *State v. Sanders*, 274 Ga. App. 393, 397 (617 SE2d 633) (2005), "the trial court on a motion to suppress is not required to accept the testimony of any witness, even if that testimony is uncontradicted." (Footnote omitted.) As a "court for the correction of errors of law . . . [we] cannot draw a different inference from the evidence or make a credibility determination contrary to the one made by the trial court." (Footnote omitted.) Id. at 398. Further, a "reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. *Anderson v. State*, 133 Ga. App. 45, 47 (209 SE2d 665) (1974)." *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

Accordingly, I must respectfully dissent to this Court's reversal of the trial court's grant of the motion to suppress.

DECIDED JULY 16, 2007.

*Shawn E. LaGrua, Solicitor-General, Jessica K. Harris, Assistant Solicitor-General*, for appellant.
*Marny J. Heit*, for appellee.