A07A1828. ANDREWS v. THE STATE.
A07A1829. STANTON v. THE STATE.
(658 SE2d 126)

RUFFIN, Judge.

Michael Stanton and Jack Andrews were jointly indicted for trafficking in cocaine, and both defendants filed motions to suppress.[1] The trial court denied the motions and, following a bench trial on stipulated facts, found both men guilty. These appeals followed. As both cases involve the same operative facts, we have consolidated them on appeal. For reasons that follow, we affirm.

"In reviewing the grant or denial of a motion to suppress, we construe the evidence in [a] light most favorable to upholding the trial

---

[1] Stanton was also charged with possessing marijuana and Andrews with driving while his license was suspended.

court's findings and judgment."[2] When the trial court's findings are based upon conflicting evidence, we will not disturb the lower court's ruling if there is any evidence to support its findings, and we accept that court's credibility assessments unless clearly erroneous.[3] "The trial court's application of law to undisputed facts, however, is subject to de novo review."[4]

Viewed in this manner, the record reveals that in the late afternoon of March 21, 2006, Officer Jimmy Jones was patrolling a stretch of I-85 in Troup County. Jones ran a routine registration check of a vehicle traveling the highway and learned that the car was registered as silver in color. According to Jones, the car appeared greenish-gold. Thus, Jones was suspicious that someone had taken the tag from another vehicle, and he pulled the car over to determine if the tag matched the vehicle identification number.

After pulling the vehicle over, Jones asked Andrews — the driver — for his driver's license. Andrews promptly handed Jones his driver's license, which had expired. At that point, Jones asked Andrews to step out of the car, and the two walked to the front of the patrol car. While Andrews appeared to be searching for another license, Jones asked where Andrews had been. Andrews responded that he and Stanton — the passenger in the car — had taken one of Stanton's relatives to the airport for a trip to California.

When Andrews was unable to produce a valid license, Jones walked to the passenger window to ask Stanton if he had a driver's license and could thus legally drive the car. Jones asked Stanton where he and Andrews had been, and Stanton responded that they had been to Jonesboro to look at a truck. Given the inconsistent responses Jones received, he became suspicious. He then took both drivers' licenses back to the patrol car to run checks and discovered that Andrews' license had been suspended. Upon exiting the patrol car, Jones walked back to the passenger window and asked Stanton — whose brother owned the car — for consent to search the vehicle. Stanton declined. Jones then informed Stanton that he was going to have his drug dog walk around the car. Within two minutes, Jones retrieved the dog from his patrol car and walked it around the perimeter of the car. After the dog alerted twice, Jones entered the car and smelled the odor of marijuana and found marijuana residue on the seat. At that point, both Andrews and Stanton were handcuffed.

---

[2] *Thomas v. State*, 287 Ga. App. 262 (651 SE2d 183) (2007).

[3] See *Glenn v. State*, 285 Ga. App. 872 (648 SE2d 177) (2007).

[4] (Punctuation omitted.) *Thomas*, supra.

A more thorough search of the car yielded a bag containing over 250 grams of cocaine. Andrews and Stanton were arrested for trafficking in cocaine.

On appeal, both Andrews and Stanton assert that the trial court erred in denying their motions to suppress because Jones lacked a sufficient basis for instigating the initial traffic stop. According to the appellants, Jones' belief that the car was a different color than that listed on the registration was a mere "hunch" that did not give rise to reasonable, articulable suspicion of criminal conduct. As a threshold matter, we note that it is unlawful to transfer a license plate assigned to one vehicle to another vehicle and/or to knowingly operate a vehicle with such improperly transferred tag.[5] Thus, if Jones had reason to believe that the tag had been improperly transferred, he would have had a legitimate basis for stopping the car.[6]

In determining whether Jones' action was reasonable, we must consider the specific reasonable inferences that he was entitled to draw from the facts in light of his experience.[7] Pictures tendered at the hearing show that the car did in fact have a greenish hue. Accordingly, Jones had a basis for believing the car to be a different color than that listed on the registration, and it was reasonable for him to infer that the license plate may have been switched from another car. Under these circumstances, we cannot say that Jones acted on a mere hunch.

The fact that Jones was ultimately mistaken does not change the result. If an officer, acting in good faith, has reason to believe that an unlawful act has been committed, his subsequent actions are not automatically rendered improper by a later finding that no criminal act has occurred.[8] Rather, "[t]he question to be decided is whether the officer's motives and actions at the time and under all the circumstances, including the nature of the officer's mistake, if any, were reasonable and not arbitrary or harassing."[9] Again, Jones had reasonable suspicion that the license plate on the car Andrews was driving had been switched. It follows that the trial court did not err in finding the initial stop to be lawful.[10]

In a related argument, Stanton argues that the trial court erred in failing to find the stop pretextual. We note that " 'the trial court's

[5] See OCGA §§ 40-2-5 (a) (1), (4); 40-2-6.

[6] See *Green v. State*, 282 Ga. App. 5, 7 (1) (637 SE2d 498) (2006) (" 'An officer may stop a car to conduct a brief investigation if specific, articulable facts give rise to a reasonable suspicion of criminal conduct.' ").

[7] See id.

[8] See *State v. Rheinlander*, 286 Ga. App. 625, 626 (649 SE2d 828) (2007).

[9] Id.

[10] See id. at 626-627.

decisions with regard to questions of fact and credibility must be accepted unless clearly erroneous.' "[11] Here, the trial court found Jones' testimony regarding the color of the car and his resulting suspicions to be credible, and we cannot gainsay that finding on appeal.[12]

The appellants also argue that Jones improperly expanded the traffic stop because the two men should have been free to leave as soon as Jones realized that he was mistaken about the car's color. However, before Jones was able to verify that the tag matched the registration, he asked for and received Andrews' driver's license, which is permitted as part of a routine traffic stop.[13] Jones noticed immediately that the license had expired, and Andrews began searching for a valid license. During this time, Jones engaged Andrews in small talk regarding the purpose of his trip, which is allowed during a traffic stop.[14] When Andrews was unable to produce a valid license, Jones obtained Stanton's license. At this point, Stanton gave his conflicting statement regarding the purpose of their trip.

According to Jones, he became suspicious "based upon the two totally different stories" he had been told. Although Jones had initially planned on ticketing Andrews for driving without a valid license, instead he asked Stanton for consent to search the car. When Stanton declined to give consent, Jones retrieved his drug dog from his patrol car and walked the dog around the perimeter of the car where the dog alerted. Approximately two minutes elapsed from the time Stanton declined to give consent until Jones performed the free air search, using the drug dog.

Under the circumstances of this case, we cannot say that Jones unlawfully expanded the traffic stop. Assuming for the sake of argument that the traffic stop had ended when Jones asked for consent to search the car,[15] Jones' conduct in performing a free air search using a drug dog was nonetheless reasonable. As we have repeatedly held, the touchstone for Fourth Amendment jurisprudence is reasonableness, which "is measured in objective terms by examining the totality of the circumstances."[16] During the traffic stop, Jones was given completely conflicting stories from both Andrews and Stanton, which is a basis for reasonable suspicion.[17]

---

[11] *Soilberry v. State*, 282 Ga. App. 161, 162 (1) (637 SE2d 861) (2006).

[12] See id.

[13] *Salmeron v. State*, 280 Ga. 735, 737 (632 SE2d 645) (2006).

[14] See id.

[15] In its briefs, the State appears to concede this point, although it is not entirely clear from Jones' testimony that he believed the traffic stop had ended.

[16] *Giles v. State*, 284 Ga. App. 1, 3 (642 SE2d 921) (2007).

[17] See *Jones v. State*, 253 Ga. App. 870, 873 (560 SE2d 749) (2002).

Although this fact alone may not have justified a prolonged extension of the traffic stop for another officer to bring a drug dog,[18] Jones had a drug dog with him and thus any further delay of Andrews and Stanton was minimal.[19] Under the totality of the circumstances, we find no error in the trial court's denial of Andrews' and Stanton's motions to suppress.[20]

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED JANUARY 30, 2008 —
RECONSIDERATION DISMISSED FEBRUARY 21, 2008 ▮

*Jamie T. Roberts, Maryellen Simmons,* for appellant (case no. A07A1828).

*W. Michael Maloof,* for appellant (case no. A07A1829).

*Peter J. Skandalakis, District Attorney, Melissa L. Himes, Lynda S. Caldwell, Assistant District Attorneys,* for appellee.

---

[18] Compare *Bennett v. State*, 285 Ga. App. 796, 797-798 (648 SE2d 126) (2007).

[19] See *Jones*, supra; *Wesley v. State*, 275 Ga. App. 363, 364 (620 SE2d 580) (2005).

[20] See id.