CANADY, J.,
dissenting.
Because I conclude that the traffic stop of Kerrick Van Teamer’s vehicle was based on a reasonable suspicion of criminal activity and that the trial court therefore correctly denied the motion to suppress, I dissent from the majority’s approval of the First District Court of Appeal’s decision reversing Teamer’s judgment and sentence and ordering that he be discharged. I would quash the decision of the First District on review and approve the decision of the Fourth District in Aders v. State, 67 So.3d 368 (Fla. 4th DCA 2011).
I.
“The Fourth Amendment permits brief investigative stops — such as the traffic stop in this ease — when a law enforcement officer has ‘a particularized and objective basis for suspecting the particular person stopped of criminal activity.’ ” Navarette v. California, — U.S.-, 134 S.Ct. 1683, 1687, 188 L.Ed.2d 680 (2014) (quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). *432 This rule is rooted in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), where “the [Supreme] Court implicitly acknowledged the authority of the police to make a forcible stop of a person when the officer has reasonable, articula-ble suspicion that the person has been, is, or is about to be engaged in criminal activity.” United States v. Place, 462 U.S. 696, 702, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).
The Terry rule recognizes that “[t]he Fourth Amendment requires ‘some minimal level of objective justification’ for making the stop.” United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting Immigration & Naturalization Serv. v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)). Reasonable suspicion thus requires “something more than an ‘inchoate and unpartic-ularized suspicion or “hunch.” ’ ” Sokolow, 490 U.S. at 7, 109 S.Ct. 1581 (quoting Terry, 392 U.S. at 27, 88 S.Ct. 1868). “A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct.” United States v. Arvizu, 534 U.S. 266, 277, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). In permitting detentions based on reasonable suspicion, “Terry accepts the risk that officers may stop innocent people.” Illinois v. Wardlow,. 528 U.S. 119, 126, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). But when a stop lacks an objective basis, “the risk of arbitrary and abusive police practices exceeds tolerable limits.” Brown v. Texas, 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). Courts making “reasonable-suspicion determinations ... must look at the ‘totality of the circumstances’ of each case.” Arvizu, 534 U.S. at 273, 122 S.Ct. 744.
The rule authorizing stops based on reasonable suspicion — which embodies an “exception to the probable-cause requirement” — rests on the Supreme Court’s “balancing of the competing interests to determine the reasonableness of the type of seizure involved within the meaning of ‘the Fourth Amendment’s general proscription against unreasonable searches and seizures.’ ” Place, 462 U.S. at 703, 103 S.Ct. 2637 (quoting Terry, 392 U.S. at 20, 88 S.Ct. 1868). This balancing process involves weighing “the nature and quality of the intrusion on the individual’s Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.” Id. “A central concern in balancing these competing considerations in a variety of settings has been to assure that an individual’s reasonable expectation of privacy is not subject to arbitrary invasions ’solely at the unfettered discretion of officers in the field.” Brown, 443 U.S. at 51, 99 S.Ct. 2637. The Supreme Court’s categorical authorization of brief investigative detentions based on a reasonable suspicion of criminal activity flows from the conclusion that “[w]hen the nature and extent of the detention are minimally intrusive of the individual’s Fourth Amendment interests, the opposing law enforcement interests can support a seizure based on less than probable cause.” Place, 462 U.S. at 703, 103 S.Ct. 2637.
II.
Here, the officer’s suspicion was aroused by the discrepancy between the color of the vehicle driven by Teamer and the color that was indicated in the registration information for the vehicle associated with the license tag on Teamer’s vehicle. Because of this discrepancy, a reasonable officer could suspect that the license tag may have been illegally transferred from the vehicle to which it was assigned. Although the color discrepancy was not necessarily indicative of illegality, it constituted “a particularized and objective basis for suspecting the particular person stopped *433 of criminal activity.” Navarette, 134 S.Ct. at 1687 (quoting Cortez, 449 U.S. at 417-18, 101 S.Ct. 690). The color discrepancy was “something more than an ‘inchoate and unparticularized suspicion or “hunch.” ’ ” Sokolow, 490 U.S. at 7, 109 S.Ct. 1581 (quoting Terry, 392 U.S. at 27, 88 S.Ct. 1868). I would therefore conclude that the officer had the “minimal level of objective justification” necessary to conduct a stop for the purpose of further investigating the discrepancy. Sokolow, 490 U.S. at 7, 109 S.Ct. 1581 (quoting Delgado, 466 U.S. at 217, 104 S.Ct. 1758).
“It is not uncommon for members of the same court to disagree as to whether the proper threshold for reasonable suspicion has been reached.” William E. Ringel, Searches & Seizures Arrests & Confessions § 11:12 (Westlaw database updated March 2014). On the issue presented by this case, different courts have disagreed regarding whether the color discrepancy was sufficient to establish reasonable suspicion. Compare Aders, 67 So.3d at 371 (holding that “[a] color discrepancy is enough to create a reasonable suspicion in the mind of a law enforcement officer of the violation of ... criminal law”); United States v. Uribe, 709 F.3d 646 (7th Cir.2013) (same); Andrews v. State, 289 Ga.App. 679, 658 S.E.2d 126 (2008) (same); Smith v. State, 713 N.E.2d 338 (Ind.Ct.App.1999) (same); with Van Teamer, 108 So.3d 664 (Fla. 1st DCA 2013) (holding that color discrepancy alone does not warrant an investigatory stop); United States v. Uribe, 2:10-cr-17-JMS-CMM, 2011 WL 4538407 (SD.Ind. Sept. 28, 2011) (same); Commonwealth v. Mason, No. 1956-09-2, 2010 WL 768721 (Va.Ct.App. Mar. 9, 2010) (same). Different views on this question are no doubt influenced by divergent judgments regarding the likelihood that the color discrepancy had an innocent explanation — namely, the repainting of the vehicle after it was registered — and was not indicative of illegality. The courts in fact have no empirical basis for reaching a conclusion about that likelihood. But a stop predicated on such a color discrepancy unquestionably falls outside the category of “arbitrary invasions solely at the unfettered discretion of officers in the field.” Brown, 443 U.S. at 51, 99 S.Ct. 2637. A stop in such circumstances cannot fairly be called an “arbitrary and abusive” police practice. Id. at 52, 99 S.Ct. 2637.
The crux of the majority’s decision in this case is its conclusion that finding “reasonable suspicion based on this single noncriminal factor would be to license investigatory stops on nothing more than an officer’s hunch.” Majority op. at 428. This conclusion suggests a categorical rule that is not consistent with the framework established in the Supreme Court’s Fourth Amendment jurisprudence. Although the totality of the circumstances must be taken into account in every case, that does not mean that an officer’s reliance on a “single noncriminal factor” — such as the vehicle color discrepancy here — is the equivalent of a “hunch.” The majority is wholly unjustified in categorizing an undeniably objective factor as a hunch. The majority’s “effort to refine and elaborate the requirements of ‘reasonable suspicion’ in this case creates unnecessary difficulty in dealing with one of the relatively simple concepts embodied in the Fourth Amendment.” Sokolow, 490 U.S. at 7-8, 109 S.Ct. 1581.
The two cases on which the majority places primary reliance do not support the. majority’s line of analysis. In United States v. Brignoni-Ponce, 422 U.S. 873, 876, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), the Supreme Court considered “whether a roving patrol may stop a vehicle in an area near the border and question its occupants when the only ground for suspicion is that the occupants appear to be of Mexican *434 ancestry.” The Supreme Court concluded that “Mexican appearance” “standing alone ... does not justify stopping all Mexican-Americans to ask if they are aliens.” Id. at 887, 95 S.Ct. 2574. The Supreme Court’s rejection of stops based purely on ethnic classification- does not support the conclusion that all stops where the officer relies on “a single noncriminal factor” are unconstitutional. Nor does Delaware v. Prouse, 440 U.S. 648, 655, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), where the Supreme Court rejected Delaware’s argument “that patrol officers be subject to no constraints in deciding which automobiles shall be stopped for a license and registration check because the State’s interest in discretionary spot checks as a means of ensuring the safety of its roadways outweighs the resulting intrusion on the privacy and security of the persons detained.” Prouse thus does not address the issue of reasonable suspicion, and it sheds no light on whether reasonable suspicion existed in the case on review here.
III.
The officer’s stop of Teamer did not transgress the requirements of the Fourth Amendment. The decision of the First District should be quashed, and Teamer’s conviction and sentence should remain undisturbed.
POLSTON, J., concurs.