**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 25, 2021**

# In the Court of Appeals of Georgia

A21A0651. GOWEN v. THE STATE.

RICKMAN, Presiding Judge.

Howard Gowen brings this interlocutory appeal from an order of the Clarke County Superior Court denying Gowen's motion to suppress contraband discovered during a warrantless search of his vehicle. Gowen contends that the trial court erred in denying his motion because police lacked probable cause for the search. He further asserts that police lacked probable cause to seize the alleged crack cocaine located during the search, and that the trial court abused its discretion when it failed to address this argument in its order denying the motion. For reasons explained more fully below, we find no error and affirm.

In reviewing a trial court's decision on a motion to suppress, this Court construes the evidence in the light most favorable to the trial court's judgment,

accepts the trial court's findings on disputed issues of fact if there is any evidence to support them, and defers to the trial court's credibility determinations. See *Edwards v. State*, 357 Ga. App. 396, 396-397 (850 SE2d 837) (2020). Viewed in the light most favorable to the order at issue, the record shows that while on patrol in downtown Athens, Officer Jackson Fields of the Athens-Clark County Police Department observed a minivan driving through a local apartment complex and ran a check of the vehicle's license plate. The check showed that a U.S. Marshal's warrant had been issued for Gowen, the registered owner of the van. Because he was not familiar with this type of warrant, Fields did not conduct a traffic stop of the van, but instead obtained further information and determined that the warrant was valid. A short time later, Fields saw the van parked in a public parking lot and he also saw Gowen moving away from the vehicle, towards the entrance of a walking trail. Fields approached Gowen and asked to speak with him; the officer and his partner then detained Gowen until they could confirm the details of the warrant. As they were waiting to learn more about the warrant, Gowen asked police if he could call his sister, who was an attorney. The officers agreed to the request, and Gowen gave Fields the keys to his van and asked the officer to retrieve Gowen's cell phone from

2

the center console. According to Fields, when he opened the van, he detected the odor of burnt marijuana.

At about the time Gowen spoke with his sister, police learned that the federal warrant was for amphetamines, had been issued a month earlier, and was the product of an investigation by a local drug task force. Police then arrested Gowen pursuant to the warrant. Following the arrest, police executed a search of the van, believing that the odor of marijuana and the fact that the federal warrant was for amphetamines provided probable cause for the search.[1] During the search, officers found a small white, yellowish rock that appeared to Fields to be crack cocaine, some "loose marijuana shakes" inside a black box, and some "smoking devices."

Gowen was subsequently charged with a single count of possession of cocaine. Before trial, Gowen filed a motion to suppress the items discovered in his vehicle, arguing that police lacked probable cause to search the van. In support of this argument, Gowen relied on the Georgia Hemp Farming Act, OCGA § 2-23-1, et seq.

---

[1] Fields explained that although the warrant did not specify whether Gowen was being charged with possession or distribution of amphetamines, in his experience, a federal warrant for a drug offense usually related to distribution of drugs.

("GHFA" or "the Act"), which went into effect on May 10, 2019.[2] This statute legalized the licensed cultivation of hemp with a specifically defined level of THC, the manufacture of products from that hemp, and the possession of those products. OCGA § 2-23-5 (outlining licensing requirements for the cultivation of hemp and the application process for obtaining a license); OCGA § 2-23-6 (outlining the permitting requirements for the processing of hemp plants into commercial products and the application process for obtaining a permit). Gowen contended that because legal hemp and illegal marijuana have a similar smell, the odor of marijuana cannot provide probable cause for the search of a vehicle because police have no way of knowing if the odor is from marijuana (an illegal substance) or hemp (a legal substance.) He further contended that the leaves police located in his van might have been hemp and might have been the source of the smell Fields detected.

At the hearing on the motion to suppress, Fields testified that he had received training on drug identification and he was familiar with marijuana and the odor of the drug in both its raw and burnt forms. He acknowledged on cross-examination that hemp was now legal in Georgia and that hemp is similar in appearance and smell to marijuana. Fields further testified that he had received no training on hemp's odor and

---

[2] Gowen's arrest and the search of his vehicle occurred in July 2019.

4

he did not know whether burnt hemp would smell like burnt marijuana. Additionally, Gowen's sister testified that it was possible her brother was using hemp or hemp products at the time police searched his van, explaining that shortly before his arrest, she had gone with Gowen to a store where those items were sold. While at the store, she saw and smelled hemp and, in her opinion, the hemp was almost identical in appearance and odor to marijuana.

Following the hearing on the motion to suppress, the trial court denied the same. In so doing, the court rejected the idea that the GHFA meant that a police officer must be able to distinguish the odor of marijuana from that of hemp before relying on the smell of marijuana to justify the search of a vehicle. The court then concluded that taken together, "the odor of burnt marijuana . . . [and] the subject matter of the pending warrant" provided police with probable cause to search Gowen's van.

At Gowen's request, the trial court certified its order for immediate review. We granted Gowen's application for an interlocutory appeal, and this appeal followed.

1. Gowen does not dispute that under our precedent, the odor of marijuana emanating from a vehicle provides police with probable cause to search that vehicle. See *Jones v. State*, 319 Ga. App. 678, 679 (738 SE2d 130) (2013) ("The fact that the

5

officer detected the odor of marijuana emitting from [the defendant's] car provided probable cause to believe that the car contained drug contraband, which authorized the search of the car."); *State v. Folk*, 238 Ga. App. 206, 208 (521 SE2d 194) (1999) ("[A] trained police officer's perception of the odor of burning marijuana, provided his ability to identify that odor is placed into evidence, constitutes sufficient probable cause to support the warrantless search of a vehicle."). See also *Douglas v. State*, 303 Ga. 178, 182 (2) (811 SE2d 337) (2018). He contends, however, that the GHFA requires that we overturn or modify this precedent. Specifically, Gowen argues that because hemp is now legal in Georgia, and in light of the testimony that hemp and marijuana are similar in smell and appearance, we should find that an officer's detection of an odor indicating the presence of marijuana cannot provide probable cause for the warrantless search of a vehicle. To prevail on this argument, however, Gowen would need to show that the GHFA permits the retail sale of raw hemp --- i.e., hemp in a form that resembles marijuana. Given the plain language of the Act, Gowen cannot make this showing.

The GHFA defines "hemp" as "the Cannabis sativa L. plant and any part of such plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with the federally

6

defined THC level for hemp[3] or a lower level." OCGA § 2-23-3 (5). And it defines "hemp products," in relevant part, as "all products with the federally defined THC level for hemp derived from, or made by, processing hemp plants or plant parts that are prepared in a form available for legal commercial sale . . . ." OCGA § 2-23-3 (6). The Act also allows entities or individuals who have been licensed and/or permitted by the Georgia Department of Agriculture to grow hemp and process it into hemp products, which may be sold to consumers. OCGA § 2-23-5; OCGA § 2-23-6; OCGA §2-23-3 (10) (A). As used in the Act, however, the terms "process" and "processing" do not include "merely placing raw or dried material into another container or packaging raw or dried material for resale[.]" OCGA § 2-23-3 (10) (B) (i). Indeed, the GHFA makes it unlawful for "[a]ny person to offer for sale at retail the unprocessed flower or leaves of the hemp plant[.]" OCGA § 2-23-4 (a) (7). Accordingly, the Act does not allow the possession of raw hemp --- i.e., hemp that has not yet been processed into a different product --- by anyone other than a licensee or permitee of the Georgia Department of Agriculture. The GHFA, therefore, does not authorize making hemp available to individual consumers in a form that resembles

---

[3] "'Federally defined THC level for hemp' means a delta-9-THC concentration of not more than 0.3 percent on a dry weight basis, or as defined in 7 U.S.C. Section 1639o, whichever is greater." OCGA § 2-23-3 (3).

7

raw marijuana. And the record contains no evidence showing that although the GHFA prohibits the commercial sale of raw hemp, there nevertheless exists a processed hemp product that is designed to be burned or smoked. Instead, in support of his motion, Gowen relied solely on the fact that the Act legalized the cultivation of hemp as an agricultural product, and argued the possibility that the "shake leaves" found in his van were hemp.

In light of the foregoing, we agree with the trial court that the smell of burnt marijuana in Gowen's van provided police with probable cause to search that vehicle. See *Jones*, 319 Ga. App. at 679.

2. In his amended motion to suppress, Gowen argued that the trial court should suppress the alleged cocaine seized from his van because, at the time police saw the item, it was not "readily" or "immediately" apparent that the item was an illegal substance. The trial court did not address this argument in its order denying the motion to suppress, and Gowen now contends that the trial court abused its discretion by failing to make any factual findings as to whether it was readily apparent that the seized item was contraband. This argument is without merit.

Where a trial court makes no explicit factual findings involving an issue raised in a motion to suppress, "we presume that the trial court implicitly made all the

8

findings in support of its ruling that the record would allow." *State v. Walden*, \_\_\_ Ga. \_\_\_ (Case No. S21A0210, decided May 3, 2021). Thus, the question before us is whether the record shows that the seizure of the alleged cocaine was lawful. We find that the record supports such a conclusion.

A police officer who, during the course of a lawful search, discovers what he suspects is contraband is authorized to seize the item. OCGA § 17-5-1 (b). See also *Glenn v. State*, 285 Ga. App. 872, 874 (648 SE2d 177) (2007) (Citation and punctuation omitted.) ("[I]t is well-settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.") Despite Gowen's assertions to the contrary, however, "[t]here is no requirement that the officer know with certainty that the item is [contraband] at the time of the seizure, only that there be probable cause to believe that this is the case." (Citation and punctuation omitted.) *Miller v. State*, 261 Ga. App. 618, 620 (583 SE2d 481) (2003). And probable cause to believe that a substance is contraband requires only

> that the facts available to the officer would warrant a man of reasonable caution in the belief that [the item] may be contraband . . .; it does not demand any showing that such a belief be correct or more likely true

9

than false. A practical, non-technical probability that incriminating evidence is involved is all that is required.

(Citation and punctuation omitted). *Combs v. State*, 271 Ga. App. 276, 276 (609 SE2d 198) (2005).

Here, the record shows that Officer Fields had training in drug recognition and experience with drug investigations. Fields testified that based on his training and experience, which included previous experience with crack cocaine, he believed the item he seized was crack cocaine. This evidence supports the conclusion that Fields had probable cause to suspect the item seized from the van was contraband, and the seizure, therefore, was justified.

For the reasons set forth above, we affirm the trial court's order denying Gowen's motion to suppress.

*Judgment affirmed. Senior Appellate Judge Herbert E. Phipps, concurs and McFadden, C. J., concurs fully in Division 2 and specially in Division 1.*

# In the Court of Appeals of Georgia

A21A0651. GOWEN v. THE STATE.

MCFADDEN, Chief Judge, concurring fully in part and specially in part.

I concur fully in Division 2 of the majority opinion. I concur specially in Division 1. I agree with the majority that we should affirm the denial of Gowen's motion to suppress, but for a different reason than the majority's reason in Division 1. I would affirm the trial court because the officer's own subjective belief that the substance he smelled was marijuana supported the finding of probable cause—even if his belief ultimately might have been mistaken.

11

Our Supreme Court has held that an officer has probable cause to search a vehicle without a warrant "when the facts and circumstances before the officer are such as would lead a reasonably discreet and prudent man to believe that the contents of the vehicle offend the law. The test of probable cause requires merely a probability—less than a certainty but more than a mere suspicion or possibility." *Brown v. State*, 269 Ga. 830, 831-832 (2) (504 SE2d 443) (1998). The odor of marijuana emanating from a vehicle provides probable cause authorizing a warrantless search of that vehicle. *Douglas v. State*, 303 Ga. 178, 182 (2) (811 SE2d 337) (2018).

The undisputed facts and the facts as found by the trial court in its order, see *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015) (noting that we must limit our consideration of disputed facts to those expressly found by the trial court in its order), validate the trial court's conclusion that probable cause supported the warrantless search of Gowen's vehicle. The trial court expressly found that the officer smelled the odor of burnt marijuana in Gowen's vehicle. The court found that the officer based the warrantless search on the detection of that odor as well as the arrest warrant "for amphetamine" and held that these facts provided probable cause.

12

Gowen's challenge to the denial of his motion to suppress is based on the assertion that legal hemp smells like illegal marijuana. He argues that given that the legal substance and the illegal substance smell the same, the officer could not determine which substance he smelled. The officer could have smelled illegal marijuana, but he just as easily could have smelled legal hemp. Thus, Gowen argues, the officer lacked probable cause to search his van.

As the United States Supreme Court has recognized a search can be reasonable and therefore justified under the Fourth Amendment by an officer's mistaken belief, if that mistake is objectively reasonable.

> The Fourth Amendment prohibits unreasonable searches and seizures. Under this standard, a search or seizure may be permissible even though the justification for the action includes a reasonable factual [or legal] mistake. An officer might, for example, stop a motorist for traveling alone in a high-occupancy vehicle lane, only to discover upon approaching the car that two children are slumped over asleep in the back seat. The driver has not violated the law, but neither has the officer violated the Fourth Amendment. . . . To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection . . . . The limit is that the mistakes must be those of reasonable men.

*Heien v. North Carolina*, 574 U.S. 54, 57, 60-61 (II) (135 SCt 530, 190 LE2d 475) (2014) (citations and punctuation).

At most, Gowen's assertion about the similarity of the smells of hemp and marijuana calls into question the reasonableness of the officer's belief that he smelled burnt marijuana. Assuming for purposes of this appeal that Gowen's assertion is correct (even though the trial court made no such finding and may have assigned no weight to the testimony Gowen elicited in support of that assertion), the officer could have reasonably, but mistakenly, believed that he smelled burnt marijuana; the smell could have been hemp but it also could have been marijuana since, according to Gowen, they smell the same. Because the officer reasonably—even if mistakenly—believed that he smelled marijuana, he had probable cause to search the van. See, e.g., *United States v. Bignon*, 813 Fed. Appx. 34 (2d Cir. 2020) (probable cause for arrest); *United States v. Boggess*, 444 FSupp3d 730, 736-737 (III) (b) (S.D. W. Va. 2020); *United States v. Vaughn*, 429 FSupp3d 499, 509-510 (III) (B) (E.D. Tenn. 2019).